JANE BISHOP, as Administratrix, etc., Appellant, *v.* THE GRAND LODGE OF THE EMPIRE ORDER OF MUTUAL AID OF THE STATE OF NEW YORK, Respondent.

By defendant's act of incorporation (Laws of 1879, chap. 189), its object was stated to be to aid and support members and their families in case of want, sickness or death; and it was authorized to create a beneficiary fund " to promote benevolence and charity," subject to such conditions and regulations as it might adopt, which fund was to be set apart to be paid over to the families, heirs or legal representatives of deceased or dis-abled members, or to such person or persons as the deceased might, while living, have directed, and from which, on satisfactory evidence of

the death of a member who had complied with all the requirements, a sum not exceeding $2,000 was to be paid; said beneficiary fund to be exempt from execution, and not liable for any debts of a deceased member. Defendant's by-laws provide that each member shall be entitled to a certificate setting forth the name and good standing and amount of the benefit to be paid at death, and to whom payable, which certificate should represent $2,000. In an action by plaintiff, as administratrix of B., to recover such sum, it appeared that B. had been a member of defendant for seven years, having paid all dues and assessments levied upon him, but had never obtained a certificate stating to whom the fund should, upon his death, be paid. *Held,* that the issuing of a certificate was not a condition precedent to the right to recover the fund in question; that a certificate was only necessary where the money was to be paid as directed by the member to some person or body other than the family, heirs or legal representatives of the deceased member; that in the absence of a certificate the money should be distributed as in cases of intestacy; not, however, as a part of the estate of the deceased, but as a special fund, subject to the exemption provided for in defendant's charter, and not to be liable for the payment of the debts of the deceased, or to be taken on any process for the payment of such debts.

Also, *held,* that plaintiff, as administratrix, had sufficient interest to maintain this action.

*Hellenberg* v. *Dist. No.* 1, *I. O. B. B.* (94 N. Y. 580); *Greeno* v. *Greeno* (23 Hun, 478) ; *Arthur* v. *Odd Fellows* (29 Ohio, 557); *Catholic M. B. Ass'n.* v. *Priest* (46 Mich. 429); *Renk* v. *Herrman Lodge* (2 Dem. 409) distinguished. *Bishop* v. *Grand Lodge, etc.,* (43 Hun, 472) overruled.

(Submitted February 4, 1889; decided March 5, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, in favor of defendant, entered upon an order made October 21, 1887, which denied a motion for a new trial, and directed judgment upon a verdict directed by the court.

The plaintiff brought this action as administratrix of William Bishop, deceased, to recover from the defendant $2,000 and interest from the 9th day of June, 1886, as the amount to which she was entitled by reason of the membership of the deceased in the corporation defendant at the time of his death.

Upon the trial the court directed the jury to render a verdict in favor of the defendant, and then directed that the plaintiff's

exceptions should be heard at the General Term in the first instance.

It was admitted at the trial that prior to the 17th day of April, 1879, the deceased was a member of the Empire Order of Mutual Aid, which was subsequently incorporated by chapter 189 of the Laws of 1879; and he was one of the persons associated with Charles A. Gould and others named in and incorporated by said act.

The objects of the corporation, as stated in the second section of the act, were, among others, to assist and support members or their families in case of sickness, want or death. The third section provided that it should be lawful for the corporation to create, hold, manage and disburse a beneficiary fund sufficient to pay all losses and expenses of the corporation for the relief of members and their families, of the lodges under the jurisdiction of the grand lodge, working under and subordinate to it, and under such conditions and regulations as might be adopted by it. The fourth section provided that such beneficiary fund, as might be deemed suitable by said grand lodge, might be provided and set apart to be paid over to the " families, heirs or legal representatives of deceased or disabled members, or to such person or persons as such deceased member might, while living, have directed ; and the collection, management and disbursement of the same, as well as the person or persons to whom, and the manner and time in which the same should be paid on the death of a member, should be regulated and controlled by the rules and by-laws of the said grand lodge." It was further provided that such beneficiary fund should be exempt from execution and not be liable to be seized or taken on any process to pay any debt or liability of a deceased member. The fifth section provided that the corporation should have power to make such by-laws, rules and regulations as they should judge proper for the admission of new members into subordinate lodges, and the government and regulation of such subordinate lodges.

The constitution of the grand lodge, among other objects, stated that the object thereof was (§ 7) " to promote benevo-

lence and charity by establishing a beneficiary fund from which, on the satisfactory evidence of the death of a member of the order who has complied with all its lawful requirements, a sum not exceeding two thousand dollars shall be paid to his family, or as he may direct."

The twenty-fourth section of the general laws provided that " each member of the order shall be entitled to a mutual aid certificate; said certificate shall set forth the name and good standing of the member, the amount of the benefit to be paid at death, and to whom payable, and such certificate shall be issued or caused to be issued, by the grand lodge, and signed by the president and secretary with the seal of the subordinate lodge attached. Each subordinate lodge shall at any regular meeting make a full report to the grand secretary of all members suspended, withdrawn or reinstated."

The twenty-fifth section provided that the certificate issued should represent $2,000.

The twenty-sixth section provided that "Any transfer desired by a member, of the mutual aid certificate issued to him, may be made by an indorsement thereon, signed by the holder, of which transfer the grand secretary shall have notice. If a certificate shall be issued payable to any other than the member personally, and the member directing the issuing thereof shall desire to have the same payable to some other person than therein expressed, on return of the certificate issued, with fees for new one, with designation of party to whom to be made payable the certificate returned shall be canceled and a new one issued in its place as desired. If the certificate originally issued is lost or cannot be obtained to be returned, the member shall give written notice to the party to whom it was issued of his intent to apply for such change for at least twenty days, and file affidavit of such fact with his application for the change, showing when, where, how and what notice was served. And if such change is opposed, it shall be referred to the grand trustees, whose decision shall be followed and be final thereupon, except appeal to the grand lodge be made within thirty days thereafter. When the

certificate shall, in terms, be payable to the member, he may transfer the same by will, which shall be construed, for all intents and purposes, as an assignment indorsed upon such certificate; but no notice thereof ¬rior to the member's death need be given."

The twenty-eighth and thirty-eighth sections of the constitution of the subordinate lodge of which the deceased was a member provided as follows:

" Section 28.  Each applicant for membership must sign the application prescribed by the grand lodge, state his age, occupation and residence, and he must be recommended by two members of the lodge in good standing.  The application must be accompanied by a sum of not less than two dollars.

" Section 38.  A member shall be considered in good standing, so far as his membership in the order is concerned, as long as he is not suspended for non-payment of dues; provided he is not under suspension for non-payment of assessments."

It was also admitted upon the trial that upon the 8th of March, 1879, the deceased was, pursuant to an application for membership, in due and regular form received, and initiated into and became a member in good standing of Eagle Lodge, No. 13, which was a subordinate lodge created by and acting under the jurisdiction of the defendant; that he paid his admission or membership fee when admitted, and at all times after he became such member to the time of his death he paid all the charges, dues and assessments charged or levied against him, and at all times and in all things complied with all the lawful requirements of the order of said defendant, and was a member of the order in good standing at the time of his death; except that the defendant denied that the deceased complied with the rules and requirements of the order of the defendant in respect to designating the person to whom his benefit should be paid upon his death.

The records of the defendant failed to show that any mutual aid certificate was ever issued to the deceased.  The plaintiff also read in evidence on the trial the application of the deceased for membership in the order of the

defendant, pursuant to which he was received and initiated, which application was as follows:

                                     "*March* 8, 1879.
" To Eagle Lodge, No. 13:

" I, William Bishop, being desirous of membership in your order, do hereby declare that the statements by me hereinafter subscribed are each and every one true to the best of my knowledge and belief.

" My age is 48 years last birthday. Occupation, butcher. Residence, 1440 Seneca St. Post-office address, Buffalo, N. Y.

" ............................, having personally made the above answers to the examining physician, I do hereby acknowledge, consent and agree that any untrue or fraudulent statement made, or any concealment of facts by me, shall forfeit my right to membership in the order and all benefits arising therefrom. In case of my death I wish my benefit paid to .......................

(Signature of applicant.)      " WILLIAM BISHOP."

The deceased died on the 14th day of February, 1886, in Buffalo, and the plaintiff was duly appointed administratrix of his estate. He left him surviving a widow, the plaintiff, and two minor children, all of whom were living at the time of the trial. The trial court directed a verdict for the defendant on the authority of a former decision of the General Term in this case, upon an appeal from a judgment in favor of the plaintiff upon a former trial, and which is reported in 43 Hun, 472. The court there held that the failure to obtain the certificate provided for in the rules above cited was fatal to the plaintiff's cause of action.

*Hopkins & White* for appellant. If it had been the intention to make the designation of a beneficiary a condition precedent of the defendant's liability, the framers of the law would have said so. What they have said is, that unless a member otherwise directs, his benefit shall be paid to his family. (*Spencer* v. *Spencer*, 11 Paige, 159.) By section 24

of the defendant's general laws, it was made the duty of the defendant to issue a certificate to William Bishop upon his becoming a member of its order, and in the absence of his designating any person as beneficiary to make it payable to his "family," pursuant to section 7 of its constitution and section 25 of its general laws, and a presumption arises upon the facts in this case that the defendant discharged that duty. (Broom's Legal Maxims, 944; *Wood* v. *Morehouse*, 45 N. Y. 368; *Mandeville* v. *Reynolds*, 68 id. 528.) The action is properly brought by the administratrix of the intestate, although she takes solely for the purpose of distribution. (*Wyman* v. *Prosser*, 36 Barb. 368; *Stein* v. *Weber*, N. Y. Daily Reg. March 18, 1884; Abbott's N. Y. A. Dig. 38, 113; Schouler's Executors, etc., §§ 198, 199, 200, 201, 211, 239; *Jenkins* v. *Freyer*, 4 Paige Ch. 47; *Bradford* v. *Felder*, 2 McCord, 169.) If any well-founded objection could be urged against the right of the plaintiff to maintain the action, it should have been taken by answer or demurrer, and not being so taken is waived. (Code of Civil Pro. § 499; *People* v. *Metropolitan Telephone Co.*, 31 Hun, 596; *Astie* v. *Leeming*, 3 Abb. N. C. 25; *Fosgate* v. *Herkimer M. & H. Co.*, 12 N. Y. 580; *Town of Piermont* v. *Lovelass*, 4 Hun, 696; *Jackson* v. *Whedon*, 1 E. D. Smith, 141.)

*Baker & Schwartz* for defendant. The deceased had no interest in the fund which the plaintiff claims, further than the right to say to whom, after his death, it should be paid. (*Brown* v. *C. M. B. A.*, 33 Hun, 263, 265.)

Peckham, J. We are unable to agree with the learned court below in its construction of the contract in question. By the act of incorporation the object of the defendant was to aid and support members and their families in the case of want, sickness or death; and the act further provided that the corporation might create a beneficiary fund for the relief of members and their families, subject to such conditions and regulations

as might be adopted by the defendant. This fund is to be set apart to be paid over to the families, heirs, or legal representatives of deceased or disabled members, *or* to such person or persons as the deceased might while living have directed. Following out such general purpose the seventh section of the constitution of the defendant, in order to promote benevolence and charity, provided for the establishment of this beneficiary fund, from which, on satisfactory evidence of the death of a member of the order, who had complied with all its legal requirements, a sum not exceeding $2,000 was to be paid to his family, *or* as he might direct. Stopping here it is plain that the parties who were to receive this $2,000 were by the very terms of the act of incorporation and of the constitution of the defendant, to be the families, heirs or legal representatives of deceased or disabled members, *or* such other person as the deceased member might while living have directed; and we think that in case no such direction was given, such payment was intended to be made to the family, heirs or legal representatives of a deceased member.

It is true the act and the constitution fail to state which it shall be in case no direction is given, whether it shall be the family, the heirs or legal representatives; but we think this expression should be construed with reference to the general purpose of the corporation, and, having such purpose in view, we think it was really meant and that it should be held to include those who would take such property as in cases of intestacy. It is true that, by the twenty-fourth section of the general laws of the defendant, it is provided that each member of the order shall be entitled to a certificate setting forth the name and good standing of the member, and the amount of the benefit to be paid at death, and to whom payable. But we do not think the issuing of such certificate is a condition precedent to the right of such legal representatives to receive the fund in question. The amount of the fund is provided in the by-laws, and it is there stated to be $2,000. We think the certificate is only necessary in cases where the money is to be paid, as directed by the member, to some person or body other

than the family, heirs or legal representatives of the deceased member.

We cannot think that it was the intention of the defendant, in making up its constitution, its general laws and its by-laws, to make the issuing of such certificate a condition precedent to its liability to pay this amount to the families, etc., of deceased members, who at the time of their decease were in good standing, and who had paid all the assessments and fully complied with all the rules and regulations of the defendant up to that time. The neglect of the company might thus result in a forfeiture of the fund. The whole object of the corporation would thus be defeated, and a most unjust result would or might follow such a construction. If no certificate were given, it seems to us it would be the same as if the direction were to pay the money to the family of the deceased. This case is an example of the injustice that might be done if the construction adopted by the General Term were to prevail. For seven years the deceased had been a member of the order. He had paid all his dues and all the assessments which had been levied upon him by reason of his membership during that time, and had, therefore, contributed to the formation of the fund, part of whose benefits had gone to the representatives of other deceased members, and his right to share in which he may well have looked forward to as a means of alleviating the distress of his family consequent upon his death, and as an aid to their support in the future. That he should lose all this by a simple failure to obtain a certificate stating that it was to his family, or, in other words, to his wife and infant children that the fund should be paid upon his death, is a result at war with every feeling of justice and propriety. We do not think that any such result is called for by a fair construction of the provisions above alluded to.

The cases cited to sustain the judgment of the General Term, viz., *Hellenberg* v. *District No. 1, Independent Order of B'nai B'rith* (94 N. Y. 580); *Greeno* v. *Greeno* (23 Hun, 478); *Arthur* v. *Odd Fellows, etc.*, 29 Ohio, 557); *Catholic M. B. Ass'n.* v. *Priest* (46 Mich. 429) and *Renk* v. *Herrman*

*Lodge* (2 Dem. 409) do not control the one at bar.    In the
first case the corporation agreed, upon the death of the testa-
tor, to pay $1,000 to his wife, if living; if dead, to his chil-
dren, and if there should be neither wife nor children, then to
such person or persons as he may have formally designated
to his lodge, prior to his decease.    The deceased died without
either wife or children, and he failed to in any way designate
to his lodge prior to his decease, the person or persons to
whom he desired payment to be made, but he left a will,
giving the money to his brother.    By the express terms of
the contract, therefore, the defendant was not to be liable
to pay until such formal designation was made by him to his
lodge prior to his decease, and as none such was made, no
liability existed.    The contract was too clear and unambiguous
for any other construction.    None of the other cases cited is
like the one at bar.    In deciding here that in the absence
of the certificate the beneficiary fund would go to those who
by the general laws of the state would take the money, we do
not mean that the money would go as a part of the estate of
the deceased, subject to the payment of his debts; but it would
be a special fund, subject to the exemption provided for in
the act of incorporation, and not to be liable for the pay-
ment of the debts of the decedent or to be taken on any
process for the payment of such debts.    We also think
the plaintiff had sufficient interest in the fund to sustain this
action in her capacity as administratrix.    It is true the fund
does not come into her hands technically and strictly as assets
of the estate of her intestate, nor is it to be liable for his
debts.    But the plaintiff, in her capacity as administratrix,
represents both herself and those others who are entitled to
receive the fund as its intended beneficiaries, for it comes to
them by reason of the membership of the deceased, and the
plaintiff is a *quasi* trustee for her children, and as adminis-
tratrix represents them in this action.    But the question as to
the right of the plaintiff to maintain this action, assuming
that there might be a liability on the part of the plaintiff
to pay some one, has not been raised herein.    The issue really

made and tried was as to the existence of any liability on the part of the defendant, and the courts below have held there was none. For the reasons already given, however, we think the action is properly brought in the name of the plaintiff.

We think the judgment of the court below should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.