JOHANNA RIESS, Respondent, v. SUPREME CONCLAVE IMPROVED ORDER HEPTASOPHS, Appellant.

First Department, May 4, 1917.

Trial — motion for direction of verdict — waiver of right to submit questions to jury — insurance — fraternal beneficiary order — suspension of members without notice on failure of local treasurer to remit assessments to supreme treasurer — unreasonable and void by-laws or regulations — presumption upon direction of verdict that supreme secretary did not comply with laws of order for suspension of local conclave — reinstatement of suspended member — failure to furnish life certificate — waiver — estoppel.

Where both parties move for the direction of a verdict and stipulate that it may be directed without the presence of the jury, they thereby waive any right which they may have to the submission of questions of fact to the jury.

A local conclave of a fraternal beneficiary order and its members are not suspended and their rights and the rights of their beneficiaries forfeited by the failure of the local treasurer to remit the monthly assessments to the supreme treasurer, for the local treasurer must be deemed to have held the assessments as the agent for the supreme conclave which enjoined upon him the duty of transmitting the money to it, notwithstanding a provision of the laws of the order that the subordinate conclave and its officers should be the agents of the members only, and not the agents of the supreme conclave.

A by-law or regulation adopted by such an order which would effect the suspension of members without notice for failure of the local treasurer to transmit monthly assessments, would be unreasonable and void.

Where it fairly appears by the evidence, it must be assumed that it was found by the trial court in directing a verdict that the supreme secretary did not comply with the requirements of the general laws of the order for the suspension of a local conclave on the failure of its treasurer to transmit the monthly assessments, in that he did not record the suspension of the members and give notice to the local secretary, notwithstanding a provision of the laws of the order that in any contro-

versy it shall be presumed that every officer of the supreme conclave and of any subordinate conclave has in all respects fully performed his duties and complied with all laws of the order.

Where, in an action by the widow and beneficiary of a deceased member of a local conclave to recover on a benefit certificate the defendant, the supreme conclave, alleges that the decedent was suspended at the time of his death, and it appears that the local conclave had received assessments to date from the deceased, but without a health certificate which was necessary to his reinstatement, and which could not be given because of his serious illness; that such assessments were not forwarded to or received by the supreme conclave, and that there was no evidence that the supreme conclave had waived such certificate or were estopped from claiming that the decedent had not been properly reinstated, the complaint should be dismissed.

APPEAL by the defendant, Supreme Conclave Improved Order Heptasophs, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 9th day of December, 1916, upon the verdict of a jury rendered by direction of the court, both sides having moved at the close of the case for the direction of a verdict.

*William P. Pickett*, for the appellant.

*Emil E. Fuchs* [*Robert Seelav* with him on the brief], for the respondent.

LAUGHLIN, J.:

It is not contended on the appeal that there was any question of fact for the consideration of the jury, and if there were the right to have it submitted to the jury was waived for both parties moved for a direction of a verdict and stipulated that it might be directed without the presence of the jury.

The defendant is a fraternal beneficiary order, incorporated under the laws of the State of Maryland, and consists of a supreme conclave and about 800 local conclaves in different parts of the country, one of which, known as Schubin Conclave, No. 607, was located in New York city. The plaintiff's husband joined it on the 13th day of January, 1908, and received a benefit certificate issued by the defendant on that day, by which it agreed that if he complied with each and every provision of the laws, rules and regulations governing the con-

clave and relating to the benefit fund, then in force or that might thereafter be enacted, and remained in good standing in the order, it would pay, out of its benefit fund, to his wife, the plaintiff, therein named, on satisfactory proof of his death and upon surrender of the certificate, the sum of $1,000 or not more than the amount of one assessment, in accordance with and under the laws of the order governing said fund, subject to certain conditions and exceptions not material to the question presented for decision. The plaintiff alleged that her husband remained a member of the order in good standing until his death, which occurred on the 2d day of March, 1916. The defendant denied that he remained a member in good standing until his death and alleged as a defense that the conclave of which he was a member failed to make the monthly remittance for assessments and *per capita* tax on the 15th day of December, 1915, which had been duly called on the first day of November, that year, and failed to pay all subsequent assessments and that the members thereof became suspended thereby; and that plaintiff also failed to pay his assessments and was not in good standing in the order at the time of his death.

We are of opinion that there is no merit in the contention that Conclave No. 607 and all of its members were suspended and their rights and the rights of their beneficiaries forfeited, owing to the failure of the treasurer of the local conclave to remit the monthly assessments to the supreme treasurer, for manifestly when the members paid their assessments to the financier of No. 607 and he delivered the money to the treasurer, the latter must be deemed to have held it as the agent of the defendant which enjoined upon him the duty of transmitting the money to it notwithstanding the fact that it attempted to provide in section 416 of the general laws that the subordinate conclave and its officers should be the agents of the members only and not the agents of the defendant. (See *Knights of Pythias* v. *Withers*, 177 U. S. 260; *Matter of Brown* v. *Order of Foresters*, 176 N. Y. 132.) Moreover, although provision was made in section 377 of the general laws for the admission of a member of a suspended conclave into another conclave, application therefor had to be made by him and he

First Department, May, 1917.                    [Vol. 177.

would have been obliged to pay the assessments and dues again
and that did not protect his rights for the reason that the
scheme devised by the defendant for the suspension of a local
conclave on failure to transmit the monthly assessments did
not provide for notice to the members and if it were given effect
their rights and the rights of their beneficiaries might become
forfeited without notice or any opportunity to protect their
rights, notwithstanding the fact that all assessments due from
the members had been duly paid as required by the laws of the
order, and, therefore, I am of opinion that a by-law or regula-
tion adopted by the order, no matter by what name it
may be designated, which would accomplish such a result
would be unreasonable and void. (See *Matter of Brown* v.
*Order of Foresters*, 176 N. Y. 132.) Furthermore, although
the member agreed for himself and his beneficiary in his
application for membership that in any controversy, action
or trial arising between him or his beneficiary and the
defendant it should " be presumed and taken *prima facie* that
every officer of said supreme and of any subordinate conclave
in the sending of notice, and otherwise, has in all respects fully
performed his duty and fully complied with all the laws of the
order, and that the burden of proving their failure of such
performance or compliance " would be upon him and his bene-
ficiary — still it fairly appears by the evidence, and it must be
assumed that it was found by the trial court in directing the
verdict, that the supreme secretary did not comply with the
requirements of section 344 of the general laws of the order pro-
viding for the suspension of a local conclave on the failure of
its treasurer to transmit the monthly assessments to the
supreme treasurer, in that he did not record the suspension of
the former members of the local conclave and give notice of
such suspension to the secretary of the local conclave and to
the supreme archon, as therein provided.

Section 347 of the general laws of the order made it the
duty of each member, among other things, to pay to the
financier of his conclave, without notice, twelve regular
monthly payments in each calendar year and a *per capita* tax
of twelve cents for each month, and provided that such monthly
payments should be due on the first day of each calendar month

and payable on or before the last day of the month. Section 356 of the general laws provided that a member failing to pay his monthly assessment, dues or *per capita* tax within the time prescribed should thereupon *ipso facto* be suspended from all rights and benefits of the order, including the rights of his beneficiary; and that such suspension should be complete without any notice or action on the part of his conclave or any officer thereof or of the supreme conclave; and that he would remain suspended until reinstated " by the payment of all arrearages and compliance with all the other requirements for reinstatement, as provided by the Laws of the Order." Section 359 provided that such a suspended member might be reinstated within thirty days from the date of suspension by paying to the financier of his conclave the payments, dues or taxes for the non-payment of which he was suspended and all accruing payments, dues or taxes during the suspension, and on *his signing a certificate of good health* in a form prescribed and furnished by the supreme secretary, a copy of which was annexed in an appendix to the printed constitution and laws of the order, and that the reinstatement should become effective only on the receipt of the certificate of health, duly witnessed as therein provided, by the supreme secretary. Section 360 provided that a member failing to obtain reinstatment within thirty days as provided in section 359 might be reinstated at any time within three months from the date of suspension by making formal application to his conclave for reinstatement as therein provided, and by undergoing a medical examination and on the approval thereof by the supreme medical director, and the payment of the dues and taxes for which he was suspended and those accruing during the period of suspension; and that such reinstatement should be effective only upon a majority secret ballot of his conclave; and that upon obtaining such vote he should be deemed reinstated and his benefit certificate should thereupon become valid. In this application for membership the plaintiff's husband expressly agreed that he had notice of the fact that no subordinate conclave or officer thereof or officer of the order " has power or authority to waive conformity to and performance of the requirements of any of the Laws, Rules and Usages of the

Order." Section 367 of the general laws of the order provided that the action of any subordinate conclave or of the financier thereof in accepting any payment or waiving any payment to be made, or in agreeing so to do, from any member under suspension, excepting as expressly prescribed in the general laws of the order, or of any conclave in reinstating or attempting to reinstate any member under suspension, excepting in strict compliance with the laws governing such reinstatement, should not bind the defendant and that any such attempted reinstatement should be null, void and of no effect. Section 412 provided that it was expressly agreed between the defendant and any member of the order as a condition of membership upon which a benefit certificate should be issued that the subordinate conclave and its officers have no rights or powers excepting those expressly prescribed in the laws of the order defining their duties; and section 413 provided that neither a subordinate conclave nor its officers has any right or power in any manner to waive the requirements of any law regulating the reinstatement of a suspended member or the payment of monthly dues and *per capita* tax or the remittance thereof, or of any law regulating any other duty of a subordinate conclave or of its officers. Section 414 provided that no act of any subordinate conclave or of any of its officers done or performed in the discharge of any duty required by the laws of the order in any manner other than as in such laws directed should be binding on the defendant or estop it in any court of law or equity from setting up any such act of a subordinate conclave or of any of its officers as a defense "in any cause between the Supreme Conclave and any member, or the beneficiaries of any member."

The regular monthly assessment required to be paid by the plaintiff's husband was two dollars and nine cents. He failed to pay part of his assessment for the month of September, 1915, and all of his assessments for the months of October and November. The latter part of December he paid to the financier of his conclave the balance owing on the September assessment, and the assessments for October, November and December and one dollar and nineteen cents on account of the assessment for January, 1916. The evidence shows that the payment

of this assessment was not accompanied by a health certificate as required by the laws of the order to which reference has been made. The plaintiff's husband also defaulted in paying the balance of the January assessment and thereby became again suspended, and while under suspension and on the 10th of February, 1916, he became ill and a physician was called who, after three or four days diagnosed his illness as pneumonia and advised the members of the family that his condition was serious, owing to the nature of the illness and his age, and that there was some danger of his dying, but that he expected him to pull through. The illness continued and progressed and finally resulted in death. On the twenty-first of February, while the plaintiff's husband was so suffering from pneumonia, a check was received by the financier of conclave No. 607, drawn by Riess & Berkenfeld to the order of the financier individually for eight dollars and forty-three cents, and he entered the same on his cash book as financier to the credit of the plaintiff's husband, and transmitted it to the treasurer of No. 607. It appears that the check was drawn by the business firm of the decedent, and it was for the amount of a double assessment for the month of February and the balance unpaid on the assessment for January, and dues to the local order. That check was not accompanied by a health certificate of the member and manifestly it could not truthfully have been so accompanied in view of the serious illness from which he was then suffering, for the form of the certificate required the member to state, among other things, that "I  *  *  *  am now in good health." The evidence shows that the assessments received by the financier of No. 607 for the month of November, 1915, and thereafter, were transmitted by him to the treasurer of No. 607, who, instead of transmitting them to the supreme treasurer, turned them over to the archon of No. 607, and they were not by him transmitted to the supreme treasurer.

There is no evidence that the defendant has in any manner waived a compliance with the laws of the order, requiring the presentation of a health certificate by a suspended member as a condition of reinstatement, nor is there any evidence upon which it can be held to be estopped from claiming that those

provisions of the law of the order were not complied with.   It is quite clear, I think, that the decedent, who was under suspension on the 21st day of February, 1916, for having failed to pay the balance of the January assessment, was not entitled to reinstatement, owing to the fact that he was then seriously ill; and it certainly was not competent for the financier of his conclave to waive the presentation of a health certificate, particularly at a time when the member's health was such that he could not truthfully have made it.   Of course, if the moneys had been transmitted to and received and retained by the defendant or by its supreme treasurer, representing it, without requiring the health certificate, then it might well be argued that the defendant waived the requirement and should be estopped from claiming that the decedent had not been properly reinstated.   (See *Gray* v. *Chapter General*, 70 App. Div. 155.) But that is not this case.   Here there is no evidence that any of the money paid while the decedent was under suspension was ever transmitted to the defendant or to its supreme treasurer, and there is no evidence of any course of business between the members and the defendant by which it waived or led them to believe it would waive the requirement with respect to the health certificate or of an obligation enjoined on the member which he failed to perform.   The only evidence in the case on which it is claimed that any of these payments was transmitted to and retained by the defendant is Exhibit F, which was produced by the supreme secretary of the defendant and offered in evidence by it.   He testified that it was the record in his office of the membership of the decedent.   It consists principally of figures and abbreviations concerning which there is no explanation.   It appears that on the face of it there are notations concerning suspensions with respect to four assessments and reinstatements with respect to three others, but it was not shown whether or not health certificates were presented with respect to those reinstatements, which do not relate to any of the assessments in question.   On the back of the exhibit under the heading " Remarks " there is a notation with respect to certain payments and, among others, one of three dollars and eighty-eight cents on January 1, 1916, but there is nothing to show what that payment represented.   The receipt of the

assessments by the financier while the member was under suspension without a health certificate was in violation of the laws of the order, and the case is, therefore, the same as if the financier was forbidden to receive any assessment, with or without a health certificate, from a suspended member, and in such case it cannot be that the supreme body would be bound by the act of the officer of a subordinate lodge or body into whose hands the member or those interested in the benefit certificate had succeeded in placing the unpaid assessments without any action of the supreme body ratifying the receipt thereof by him.

On this ground, without regard to the other questions in the case, the judgment must be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., SCOTT, SMITH and PAGE, JJ., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs.