MARION GREATSINGER, Plaintiff, *v.* A. H. HAWLEY, as Treasurer of the Brotherhood of Locomotive Firemen and Enginemen, Defendant.[*]

Supreme Court, Chemung County, January, 1922.

*Benevolent associations — readmission to membership — right to participate in beneficiary fund — defects in procedure due to officers of local lodge who failed in duty enjoined by constitution of the association — estoppel to deny rights of readmitted member.*

ACTION by a beneficiary to recover a death benefit.

*Mandeville, Personius & Newman* and *David N. Heller,* for plaintiff.

*Baldwin & Allison,* for defendant.

TUTHILL, J. The determination to be made is whether Albert Greatsinger, the plaintiff's former husband, was a member of the Brotherhood of Locomotive Firemen and Enginemen at the time of his death, October 26, 1918, permitting plaintiff to participate in the beneficiary fund of the order to the extent of $1,500. It is conceded the deceased became a member of the brotherhood in January, 1912, and was expelled in May, 1913, for non-payment of dues. From the evidence I believe it should be found that the decedent desired to be readmitted to membership in June, 1917, signed an application for readmission, paid the prescribed readmission fee and thereafter regularly paid his assessments to the financial secretary of the local lodge.

The constitution of the brotherhood in force at the time of decedent's death provided as to the readmission of former members (Art. 25, § 2), that application for readmission should be made through a local lodge, accompanied by a fee of three dollars and balloted on by the local lodge. If resulting favorably, the recording secretary was to notify the applicant to call on the medical examiner for the purpose of making application for a beneficiary certificate, and upon receipt of the certificate by the recording secretary (apparently from the medical examiner) he was to forward it to the general secretary and treasurer of the order, and if the former member was readmitted, the general secretary and treasurer was directed to notify the financial and recording secretaries of the lodge to which admission was given of the date the assessments were payable. I am satisfied that the applicant did each affirmative act so far as he was notified or requested to secure his readmission, which had been solicited by the president of the local lodge. The delinquencies in the procedure for readmission were those

* Affirmed by Appellate Division, Third Department, without opinion, 203 App. Div. ——.—[REPR.

of the officers of the lodge in failing to perform their duties as required by the constitution. The financial secretary's cash book shows an account was opened with Mr. Greatsinger and receipts are produced showing he paid his assessments as called for from time to time. So far as the financial part of the transaction is concerned, there is no complaint that the brotherhood had been deprived of any emolument which was its due, or its timely payment to the local lodge, nor is anything indicated that decedent was an undesirab e member or a hazardous risk, from which, with other facts, the plaintiff contends an estoppel resulted against the defendant.

It may be conceded that the constitution of the defendant is a part of a beneficiary certificate as though written at length therein. Yet a failure to comply with the details thereof as to readmission would not prevent the defendant from being estopped in denying membership to one who had done all required of him by those intrusted with authority to procure and act on applications for readmission in the first instance, but had failed in details required by the defendant subsequent to the acts of performance on the part of the applicant. The duty did not devolve on the member procuring readmission to ascertain whether the officers of the local lodge had performed their duties as to his readmission. He had signed all the papers requested and paid the consideration exacted as a readmission fee, and from time to time his assessments as he received notice of the same. It was most natural for the former member to believe he had been completely restored to membership and was entitled while living to the benefits to be derived therefrom, and, thereafter, that his beneficiary would participate in the fund provided for in the event of death. The general plan of operation of the defendant contemplated its local affairs, as procuring of new members, should be conducted by local lodges through their officers. Art. 17, § 5 (a). A complete functioning of the brotherhood could only be had by the officers of the local lodges acting in many respects for and in behalf of the grand lodge as its representatives. From necessity the grand lodge is bound to rely on the officers and members of the local lodges in procuring new members, which is a *sine qua non* to the existence of a beneficiary department of the defendant. This was appreciated by the local president who solicited Mr. Greatsinger's readmission and delivered for his use a blank application for readmission. In such solicitation the president stated on the stand he was performing one of the duties of his office. A similar situation is found in the case of *Lounsbury* v. *Knights of Maccabees*, 128 App. Div. 394, 396; affd., 199 N. Y. 573, where the court said: " So far as actual reinstatement was the result of the default or neglect of the local record

keeper, he was the representative of the defendant and not of the deceased and defendant could not gain any advantage growing out of such default or neglect." Citing *Matter of Brown* v. *Order of Foresters*, 176 N. Y. 132; *Knights of Pythias* v. *Withers*, 177 U. S. 260. In *Beil* v. *Supreme Lodge*, 89 App. Div. 609, 612, the court by McLaughlin, J., said: " The subordinate lodge was, in a sense, the agent of the supreme lodge. Its knowledge was the knowledge of the defendant, * * *." In *McClure* v. *Supreme Lodge*, 41 App. Div. 131, 133, the court, by Spring, J., observes: " It is established in this case that McClure, the insured member, was in good standing in his local lodge at the time of his death. As an individual he was not delinquent; he had paid every call made upon him. Whatever defense there may be to the payment of his benefit certificate arises from the remissness of the officers of the local lodge, or to a misunderstanding between them and the defendant. Inasmuch as the member himself was paying promptly and honestly endeavoring to keep alive his certificate, every reasonable intendment will be accorded the plaintiff to prevent a forfeiture of her certificate."

The case of *Riess* v. *Supreme Conclave Imp. Order Heptasophs*, 177 App. Div. 845, which is the principal authority relied upon by the defendant to sustain its contention, is, I believe, clearly distinguishable from the case at bar. If there appeared an attempt was made to reinstate a suspended member during his final illness by the payment of back dues to the local financier, but without furnishing a health certificate from the member as required by the rules of the order and which could not have then been made owing to the serious illness of the member. It was an effort to perpetrate a fraud upon the order by attempting to reinstate a member while fatally stricken. In the present case the decedent lived fifteen months after his alleged readmission to membership, was thirty-six years of age and for aught that appears was in good health until taken by influenza. Also, in the *Riess* case, there was no evidence that the supreme body of the order or an officer thereof, had any notice that the decedent had been readmitted or claimed readmission to the order. But it does appear in the case under consideration that the plaintiff's husband after his supposed readmission, actively endeavored to secure the official periodical of the brotherhood and to that end in February, 1918, communicated with the editor and manager thereof stating that he was not receiving his magazine since he was taken back in the lodge in June last and that he belonged to Liberty Lodge 242, Elmira, N. Y.; and again in September, 1918, the deceased communicated with the editor of the magazine asking that the same be sent him and stating in

54

substance that he was entitled to it by reason of his membership in the brotherhood and that he was making his payments thereto every month. This letter was referred to the general secretary and treasurer and it is claimed that thereafter he received the official magazine. This is important in that it was notice to an officer of the grand lodge of the brotherhood of the claim and assumption by Mr. Greatsinger that he had been readmitted as a member, was paying his dues regularly and entitled to the benefits accruing therefrom, among which was a copy as published of the official magazine of the order. These communications were addressed to one who, under the constitution (Art. 1, § 4), was of the personnel of the grand lodge, and this official in turn evidently advised the general secretary and treasurer as shown by the letter of September 26, 1918. No such knowledge or means of knowledge of readmission appears in the *Riess* case.

The defendant also disclaims liability as a new benefit certificate was never issued the decedent, and asserts the one originally issued him when he joined the order in January, 1912, ceased to have validity when the defendant was expelled for non-payment of dues. In terms I find no provision in the constitution requiring the issuing of a new certificate when a member is readmitted except a fee for such a certificate is provided. Assuming new certificates in due course are issued to readmitted members, if an applicant was entitled to the same the order could not change its liability thereunder by failing to issue and deliver a certificate. In Joyce on Insurance (vol. 1 [2d ed. 1917], § 90, p. 310), it is said: " So in mutual benefit societies, if the insured has complied with all the other requirements of the society, the fact that he has not taken out a certificate or that one has not been delivered to him, does not prevent a recovery, and such recovery may be had without producing such certificate." Citing in note, *Bishop* v. *Grand Lodge of Empire Order of Mut. Aid*, 112 N. Y. 627; *Lorscher* v. *Supreme Lodge Knights of Honor*, 72 Mich. 316. In the *Bishop* case Judge Peckham for the court (p. 635), said: " For seven years the deceased had been a member of the order. He had paid all his dues and all the assessments which had been levied upon him by reason of his membership during that time, and had, therefore, contributed to the formation of the fund, part of whose benefits had gone to the representatives of other deceased members, and his right to share in which he may well have looked forward to as a means of alleviating the distress of his family consequent upon his death, and as an aid to their support in the future. That he should lose all this by a simple failure to obtain a certificate stating that it was to his family, or, in other words, to his wife and infant children that the fund should be paid upon his

death, is a result at war with every feeling of justice and propriety."

In the certificate issued Mr. Greatsinger, the plaintiff was named as sole beneficiary, and under the constitution (Art. 12, § 1 (d), p. 51) she would be entitled to the same participation if there was no legally designated beneficiary.

I have, therefore, reached the conclusion the plaintiff is entitled to judgment for the amount claimed, with interest. Findings may be submitted accordingly.

Judgment accordingly.