ALVORA B. PAYNE, by Guardian, Appellant, v. OLA BURDETTE, Respondent.

### Kansas City Court of Appeals, April 30, 1900.

1. **Insane Person: CONTRACTS OF: CONCLUSIVENESS OF PROBATE JUDGMENT.** The judgment of a probate court adjudging a person insane and appointing a guardian is conclusive in regard to such person's competency to make ordinary contracts and renders such contracts absolutely void.

2. ———: ———: ———: **MARRIAGE.** Marriage in Missouri is a civil contract but does not come within the purview of statute making the contract of an insane person void, since it is a contract peculiarly individual and personal and incapable of being made. by a representative. The statute means that the parties must be capable in law of consummating a valid marriage contract and the judgment of a probate court is not conclusive.

Appeal from the Callaway Circuit Court.—*Hon. J. A. Hockaday,* Judge.

AFFIRMED.

*A. Finley* and *D. H. Harris* for appellants.

(1) Marriage is a civil contract, to which the consent of parties capable in law of contracting is essential. R. S. 1889, sec. 6840 (R. S. 1899, sec. 4311). (2) No person can enter into a valid marriage contract who, by reason of mental imbecility, has not sufficient mental capacity to give an intelligent consent thereto; and a person who is incapable

from mental imbecility to take care of his own person and property, is such an individual and has not the requisite mental capacity to dispose of his person or property by the matrimonial contract any more than by any other contract.    Tiffany's Personal and Domestic Relations, pp. 15, 16; 1 Bishop on Marriage, Divorce and Separation, secs. 588, 589, 590 and 595; 1 Blackstone's Commentaries, sec. 439.    (3)    Alvora B. Payne, as shown by the evidence at pages 8, 12, of this brief, was at the time of the pretended marriage, and continuously to and during the trial of this cause in the circuit court, a person of unsound mind and incapable of managing his affairs, and under guardianship as provided by statute. R. S. 1889, secs. 5513, 5514, 5517 and 5521.    (4)    Alvora B. Payne, having been found by the probate court of Callaway county, Missouri, to be a person of unsound mind and incapable of managing his affairs, and having been placed under guardianship by said court, it was error for the court to hear evidence as to the mental condition of the mind of said Alvora B. Payne at the time of said pretended marriage; the probate records are conclusive on that subject, and the defendant was precluded thereby from introducing any evidence on that point; nor would she be permitted to attack said judgment in a collateral proceeding.    Tiffany's Personal and Domestic Relations, p. 423; 2 Greenl. on Evid. [15 Ed.], sec. 371; Rannells v. Gerner, 80 Mo. 474; Coleman v. Farrar, 112 Mo. 75; Kiehne v. Wessell, 53 Mo. App. 670, 671.    (5)    The judgment of the probate court declaring the said Alvora B. Payne to be a person of unsound mind and incapable of managing his affairs, standing of record, was notice to all the world of his condition, and the defendant at the time she entered into the pretended marriage with the said Alvora B. Payne, had notice of his condition, and contracted with him at her peril.    Coleman v. Farrar, 112 Mo. 75; Kiehne v. Wessell, 53 Mo. App. 670; 2 Greenl. on Evid. [15 Ed.], sec. 371.

(6)   If marriage is a civil contract and can only be entered into by the consent of parties capable in law of contracting and consenting, then this pretended marriage between the said Alvora B. Payne and the said Ola Burdette, was and is void and the court should so declare.   R. S. 1889, sec. 5542; Tiffany's Personal and Domestic Relations, p. 423; 1 Bishop on Marriage, Divorce and Separation, sec. 602; 1 Blackstone's Commentaries, sec. 439; Rannells v. Garner, 80 Mo. 474; Coleman v. Farrar, 112 Mo. 75; Kiehne v. Wessell, 53 Mo. App. 670.

*N. D. Thurmond* for respondent.

(1)   Our statute on marriage is this:   Marriage is considered in law as a civil contract, to which the consent of the parties capable in law of contracting is essential (sec. 6840). This statute requires that the parties to the marriage must be capable of consenting to the marriage, but does not require that they should be capable of entering into any other contract.   State v. Bittick, 103 Mo. 183.   (2)   Any adult person can enter into a valid marriage contract who has sufficient mental capacity to give an intelligent consent thereto.   Nor does it follow that because a person was found to be at one time incapable from mental imbecility to take care of his own person and property, that he will permanently remain in that condition.   Tiffany's Personal and Domestic Relations, pp. 15, 16; 1 Bishop on Marriage, Divorce and Separation, secs. 589, 600, 601, 603; Johnson v. Johnson, 45 Mo. 595.   (3) It is well settled that a person under guardianship, because of mental incapacity, is prohibited from making a contract with reference to his property that will bind himself or his property, although such mental incapacity may have been in fact removed by recovery from such malady as produced the mental incapacity.   The authorities cited by appellant fully established this position, but in all these cases cited by appellant the question of marriage was not in the minds of the

authors cited. It is clearly evident to one who is not a *non compos* that there may be, and often is, a marked distinction between a legal status of a person under guardianship and his actual mental status. The law empowers the guardian to make all contracts for his ward with reference to those things that come under the guardian's control. But marriage is different from mere commercial transactions and relations. In marriage, consent must come from the minds of the parties to the marriage. So a guardian can bind a ward's property, but he can not bind his person in marriage. The marriage of a person, so insane at the time of the marriage as not to be capable of consenting thereto or of understanding what he is doing, is void, not because of any statute, but is void because of the want of consent in one of the parties. But if the marriage was entered into in a lucid interval it is binding even though the party is habitually insane.

*I. W. Boulware* for respondent.

(1) An inquisition is only *prima facie,* and not conclusive evidence of insanity. This may be rebutted. The question in this case is, what was his condition at the time of marriage? Did he then know and understand the nature of the contract of marriage? Portsmouth v. Portsmouth, 1 Hagg. Const. 355; Keys v. Norris, 6 Rich. Eq., 388; Chapline v. Stone, 77 Mo. App. 523; 11 Bishop M. & D., secs. 1243, 1244, 1245; Surgeon v. Sealy, 2 Atk. 412; Yates v. Bown, 2 Stra. 1104; Faulder v. Silk, 3 Camp. 126; Baxter v. Portsmouth, 5 B. & C. 170; 1 Bishop, M. & D. 602. (2) An inquisition and appointment of guardian was only made conclusive by Act of Parliament during the reign of George II. It is not —never was the law in this state when applied to a marriage contract. 1 Bishop, M. & D., sec. 602, and notes. (3) As to what is the effect of a commission of lunacy, I quote the following: "As to law, it was in England declared in 1742 by 15 George II, C. 30, that the marriage of one under a commission of lunacy shall be null and void to all intents

and purposes whatever. This statute is of a date too recent to be common law with us. By its necessary operation the marriage of a person under such commission was, while unrevoked, void—though in fact he had recovered his reason." This law was never in force in this state, and besides, it was repealed by the Act of Parliament, 1 Bish., M. & D., sec. 602; 1 Bish., M. & D., sec. 1245; Keys v. Norris, 6 Rich. Eq. 388, 390; Johnson v. Kinkaid, 2 Que. Eq. 470; Clark v. Trail, 1 Met. Ky. 35; Lucas v. Parsons, 23 Ga. 267; Rogers v. Walker, 6 Pa. 371; Stone v. Damon, 12 Mass. 488; Portsmouth v. Portsmouth, 1 Hag. Con. 355; 3 Am. and Eng. Ency. of Law, 154; Surgeon v. Sealy, 2 Atk. 412; Yates v. Brown, 2 Stra. 1104; Baxter v. Portsmouth, 5 B. & C. 170. (4) "The putting of one under a commission of lunacy or guardianship, does not in the absence of special words in the statute, disqualify him in law to marry—if in fact he be sane at the nuptials." 2 Bishop, M. & D., sec. 1243; Slais v. Slais, 9 Mo. App. 96. (5) The marriage of an insane person during a lucid interval, is good. It was so in England prior to the statutes—hence it is so now at common law in this state—the only question being whether or not at the time of marriage both parties were capable of consenting. This is the law whether the party is under guardianship, found by inquisition to be insane, or a minor over 14 years of age. 1 Bish. M. & D., sec. 603; Shelf v. Meyers, 1 Hag. Con. 414; 4 Am. and Eng. Ency. of Law, 440-442; Johnson v. Johnson, 45 Mo. 601. (6) Marriage differs in many particulars from ordinary, general and commercial contracts. This contract may be made by those incapable of making any other valid contract. Johnson v. Johnson, 45 Mo. 595-599, and authorities therein cited. (7) Marriage is not alone the result of brain action. It is, in the main, the act resulting from the promptings of the heart and affections. It is a matter of state and community concern. 1 Bishop, M. & D., sec. 600; Bishop, Con., secs. 962-964; Davron v.

White, 15, Steward Ch. 569. The inquisition and appointment of guardian, is only *prima facie* or conclusive that Payne was not of sound mind then and not what was the condition of his mind over four years thereafter—at time of his marriage.

ELLISON, J.—This is a proceeding instituted by plaintiff as guardian to obtain a decree annulling the marriage of his ward with defendant. The circuit court refused the decree.

The facts are that plaintiff's ward was regularly declared to be a person of unsound mind and plaintiff was appointed his guardian by the probate court of Callaway county. About four years afterwards and while the judgment of the probate court was in force, and while plaintiff was still acting as his guardian, the ward, then about 26 years of age, married defendant, a female about 21 years of age. The trial court refused to regard the judgment of the probate court as conclusive evidence of insanity at the date of the marriage and upon a hearing in that behalf found that at the time of the marriage the ward had capacity to legally contract the marriage relation.

It is not disputed that the marriage of an insane person is void, and while in some jurisdictions it is thought not to be absolutely necessary to have a decree avoiding it, yet that it is generally prudent to do so. Therefore, the sole question here is, is the judgment of the probate court adjudging plaintiff's ward to be insane and appointing a guardian conclusive as to his incapacity at the date of the marriage? As to matters of ordinary contracts, it is held, in this and many other states, to be conclusive and to make such contracts absolutely void. Rannells v. Gerner, 80 Mo. 474; Coleman v. Farrar, 112 Mo. 54; Kiehne v. Wessell, 53 Mo. App. 667.

It is contended that our statute (R. S. 1889, sec. 6840) makes marriage a civil contract and places it on the same foot-

ing with other contracts; and that therefore judgment of insanity should be held to be conclusive as in other contracts. It reads as follows: "Marriage is considered in law as a civil contract, to which the consent of the parties capable in law of contracting is essetial." The statute (sec. 5542), declares: "No contract of any person found to be of unsound mind, as hereinbefore specified, which shall be made without the consent of his guardian, shall be valid or binding, and such guardian may sue for and recover any money or property which may have been sold or disposed of by his ward without his consent."

While the language of each of these sections is general and broad, we do not believe they should be interpreted literally. The latter declares that no contract of such person shall be valid. And the former declares that marriage is a civil contract to which the consent of the parties capable in law of contracting is essential. The latter section should be restricted to such contracts as a representative, in the nature of things, could make. The section reads that those contracts made without the consent of the guardian shall be invalid, which is to say that those made by and with the consent of the guardian would be valid. But in the nature of things this could not apply to marriage, since that is a contract so peculiarly individual and personal as not to permit of any one acting for the party concerned. Therefore, we conclude that that section did not intend to include a marriage contract.

The former section declares that the consent of the parties capable in law of contracting is essential. These words do not mean that the parties shall be capable in law to make contracts generally, for we know that a minor may contract a legal marriage. They mean that the parties must be capable in law of consummating a valid marriage contract.

Marriage is a status in which the general public, as well as the immediate individual is concerned. We therefore feel the more inclined to construe our statute as herein stated.

Counsel for appellant have cited us to some opposing authorities, to be found in their brief, but we are not without support for the judgment of the trial court.   2 Bishop M. & D., sec. 1243; Johnson v. Kincaid, 2 Ired. Eq. 470; Keyes v. Norris, 6 Rich. Eq. 388; Lucas v. Parsons, 23 Ga. 267; Stone v. Damon, 12 Mass. 488.   The latter case holds that judgment of lunacy was not conclusive of noncapacity afterwards to make a will.   While the courts in Massachusetts, like those in Missouri, hold to the conclusiveness of judgment of insanity as regards ordinary transactions and contracts, they do not, as shown by the last case cited, hold them conclusive in all cases.   This is further shown by the case of Leonard v. Leonard, 14 Pick. 280, where it was held that payment to a ward of a promissory note payable to him and in his possession was of no effect, and that the judgment of lunacy was conclusive, but the court said:

"We are of the opinion, that as to most subjects, the decree of the probate court, so long as the guardianship continues, is conclusive evidence of the disability of the ward; but that it is not conclusive in regard to all.   For example, the ward, if in fact of sufficient capacity, may make a will, for this is an act which the guardian can not do for him."

In all those matters which a guardian may transact and perform for his ward, the judgment of lunacy should, during the guardianship, be held to be conclusive.   But in those matters which can not be performed by a guardian, such judgment ought not to be conclusive.

The result of these views is that the judgment of the circuit court should be affirmed.   *Smith, P. J.,* concurs; *Gill, J.,* absent.