SWITCHMEN'S UNION OF NORTH AMERICA *v*. GILLERMAN.

1. INSURANCE—FRATERNAL BENEFIT INSURANCE—BENEFICIARY.

Where a fraternal insurance association by-law provides that benefits shall only be paid or certificates transferred to certain persons named in such by-law, benefits should be paid, where the beneficiary named in a certificate is not living at the death of the insured, to the persons named in the by-law in the order given therein, although the by-law does not so provide.

2. MARRIAGE—VALIDITY.

A marriage in a county of the State between nonresidents of such county, is valid, although one of the parties makes a false affidavit as to her residence in such county in securing a license for the marriage for which she would be subject to penalty under 3 Comp. Laws, § 8602 *et seq*. (4 How. Stat. [2d Ed.] § 11437 *et seq.*, 3 Comp. Laws 1915, § 11376 *et seq.*).

Appeal from Kent; Brown, J. Submitted October 16, 1916. (Docket No. 149.) Decided May 31, 1917.

Bill of interpleader by the Switchmen's Union of North America against Lena Gillerman and Florence Gillerman to determine the right to the proceeds of a policy of insurance. From a decree for defendant Lena Gillerman, defendant Florence Gillerman appeals. Affirmed

*E. A. Maher*, for appellant.

*Corie C. Coburn*, for appellee.

BIRD, J. Plaintiff shows by its bill that in October, 1901, August Gillerman, of Grand Rapids, became a member of its union, and there was issued to him a benefit certificate for the sum of $750, payable in the event of his death to his wife, Carrie Gillerman; that in June, 1906, the said August and Carrie Gillerman

legally adopted Florence Gillerman and made her their heir; that subsequently, and in February, 1911, Carrie Gillerman died, and that in September, 1912, the said August Gillerman was remarried to. the defendant Lena; that in August, 1913, August Gillerman died without having designated another beneficiary in the certificate, although the by-laws of the union entitled him to that privilege, and as a result thereof the fund is claimed by both the widow, Lena Gillerman, and the adopted daughter, Florence Gillerman. The company admits liability, but states that it is unable to determine which of these parties is legally entitled thereto, and therefore it tendered the fund into court and prayed that the defendants interplead.

1. The chancellor determined that the widow was entitled to the fund, and he appears to have been influenced in reaching this conclusion by the fact that section 89 of the by-laws provides that:

"Payments of death benefits shall be only made, or certificates transferred to, a lawful wife, children, adopted children, parents, brothers and sisters of the whole blood, affianced wife, or persons lawfully dependent upon the member."

His conclusion is that as payment must be made to some one in the class mentioned, and as the deceased made no designation, it should be paid to the persons named in the class in the order in which they are named, and that, the widow being first named, she should receive the fund. This conclusion finds support in the case of *Masonic Mutual Relief Ass'n* v. *McAuley*, 2 Mackey (D. C.), 70, which dealt with a similar case on the facts. It was there said in part that the fund should go to the people enumerated in the association's by-laws (*i. e.*, the widows, orphans, heirs, assignees, or legatees), and—

"the fund is to go to some one of these parties. They are mentioned disjunctively; the money is to be paid

to the widow, *or* the orphans, *or* the heir, *or* the assignee or legatee. Now, that means one of two things, either that it shall go to some one of these to be selected by some authority, or else that they are to have precedence in the order in which they are named. But there is no authority provided for or indicated in either the charter or the by-laws by whom any one of these beneficiaries shall be selected; and therefore our conclusion is that the order in which they are named is the order in which they are to benefit by this fund—first, the widow; if there is no widow, then the orphans; if there is no orphan, then the heir," etc.

See, also, *Riley* v. *Riley,* 75 Wis. 464, 466 (44 N. W. 112) ; *Bishop* v. *Empire Order of Mutual Aid,* 112 N. Y. 627 (20 N. E. 562).

It is not an uncommon provision in certificates of this character to provide that, in the event the beneficiary predeceases the insured, the fund shall be payable to certain persons *in the order named.* In the present case, as in *Masonic Mutual Relief Ass'n* v. *McAuley, supra,* the persons to whom the fund was payable are named, but no direction is made as to which one shall be paid. We are of the opinion, however, that the construction in *Masonic Mutual Relief Ass'n* v. *McAuley* is a reasonable one, in view of the fact that the qualified beneficiaries are usually named in the order of nearness of relationship to the insured. As indicating the general purpose of the union in this respect, the latter part of section 89 rather strengthens this view. In the event of a divorce it provides that the fund shall be payable in the following order:

*"First,* to the children of the certificate holder, if any; if not, to the mother, if living; in case of her death, to the father, if living; in case of his death, to the brothers and sisters, providing there are any living."

This direction for the payment of the fund, considered in connection with the foregoing designation of the persons entitled to the fund, is rather persua-

sive that it was the intention of the union that in a case like the present one the fund should be paid to the beneficiaries in the order in which they are named.

2. But counsel for the daughter insists that the record does not show a legal marriage between the insured and defendant Lena. This is based upon Lena's testimony that she resided in Grand Rapids at the time of the marriage, whereas the affidavit for the marriage license avers that she was a resident of Ottawa county, where they were married, and that, as neither was a resident of Ottawa county, no valid marriage could be effected. The record shows that her people lived in Ottawa county, that she worked in Grand Rapids a part of the year, and that she lived at her parents' home when not at work. We think her testimony is not inconsistent with the idea that she regarded her parents' home as her home, and that she stayed or resided, as she put it, in Grand Rapids while at work. But even if this were not so, and, neither of them lived in Ottawa county at the time of the marriage, we are not prepared to hold that the marriage would be invalid. The statute (3 Comp. Laws, § 8602 *et seq.* [3 Comp. Laws 1915, § 11376 *et seq.*]) does not in terms make it so, but provides that any person making a false affidavit to secure a license shall be guilty of perjury and may be prosecuted therefor.

3. It is also urged that, if Lena was the lawful wife of the insured, the fund would go to the heirs of the insured, and in such event the adopted daughter would share in the fund. The thing which stands in the way of this contention is that the contract of insurance does not include the word "heirs" in the class of beneficiaries, but does provide that, if none of the beneficiaries named are capable of taking the fund, it shall revert to the union.

4. We are not impressed that the testimony justifies counsel's contention that the adopted daughter should

be decreed the fund because of a promise made by the insured to the parent of Florence that, if she would consent to her adoption, he would make the fund payable to her.

Our conclusion is that Lena Gillerman, the widow, is entitled to the fund, and, as this conclusion is in accord with the holding of the trial court, the decree will be affirmed with costs of this court to defendant Lena Gillerman.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.