## CHARLES A. JOHNSON, BY EDWIN W. HELLIE, HIS GUARDIAN AD LITEM, v. BERTHA JOHNSON.[1]

March 19, 1943.

No. 33,363.

*Donald J. Kelly,* for appellant.
*Miner & Miner,* for respondent.

[1]Reported in 8 N. W. (2d) 620.

PETERSON, JUSTICE.

Against the wishes of plaintiff and his guardian appointed by the probate court, his guardian *ad litem* appointed by the district court brought this action to have plaintiff's marriage with defendant annulled upon the grounds that plaintiff lacked mental capacity to contract the marriage and that the marriage was void because it was solemnized under a license fraudulently and illegally obtained in the state of Iowa.

In August 1939, upon plaintiff's petition therefor reciting that by reason of old age (he was then 77 years old) and other infirmities he was unable properly to manage and to care for himself and his affairs, the probate court of Hennepin county, where plaintiff resided, under the provisions of Minn. St. 1941, § 525.54 (Mason St. 1940 Supp. § 8992-129), appointed a guardian of his person and estate as an incompetent. The guardian so appointed resigned, and another was appointed to succeed him. The successor guardian having refused to bring this action, the district court appointed a guardian *ad litem* for the purpose.

On April 7, 1941, plaintiff and defendant were married at Mason City, Iowa. He was then 79 and she 64 years old. She knew that he was under guardianship. Prior to going to Mason City defendant applied to the district court of Hennepin county for a marriage license, which was refused on the ground that plaintiff was under guardianship. The parties then went to Northwood, Iowa, where they tried to procure a license, which was refused for the same reason. They went from Northwood to Mason City, Iowa, where plaintiff, by falsely swearing that he was under no disability, obtained a license. A justice of the peace, acting under the license, married the parties. Immediately after the marriage was solemnized the parties returned to Minneapolis, Hennepin county, where they have ever since resided and cohabited.

There was no medical testimony to show plaintiff's mental condition at the time the marriage was contracted. The order of the probate court adjudicating plaintiff to be an incompetent was received in evidence. It was also shown that the probate court had

denied three separate applications to restore plaintiff to capacity and also that it had refused to adjudge him insane in proceedings had for that purpose. The findings of two physicians in the insanity proceedings were that plaintiff "has shown certain faulty judgments in handling his property and has manifested certain tendencies toward women that might be considered excessive. However there is no evidence of hallucinations, delusions, abnormal suspicions, memory defects or other definite evidences of mental deterioration. It is therefore our conclusion that the patient [plaintiff] at this time cannot be classified as suffering from insanity." Plaintiff testified at length concerning himself, his property, and his affairs. The evidence as a whole was such as to support a finding that he had sufficient mental capacity to contract marriage, unless a finding to the contrary was compelled by the fact that he had been adjudicated an incompetent by the probate court.

The guardian *ad litem* contended that the adjudication of the probate court in the guardianship proceeding that plaintiff was an incompetent conclusively established his lack of mental capacity and that the marriage was void in Iowa, where it was celebrated, because plaintiff lacked mental capacity to contract a marriage under the law of Iowa and because the license authorizing it was obtained by plaintiff's perjury and fraud on the officer issuing it, in virtue of the provisions of the Code of Iowa, 1939, as follows:

"10427. Marriage is a civil contract, requiring the consent of the parties capable of entering into other contracts, except as herein otherwise declared."

"10429. Previous to the solemnization of any marriage, a license for that purpose must be obtained from the clerk of the district court of the county wherein the marriage is to be solemnized. Such license must not be granted in any case:

\* \* \* \* \*

"5. Where either party is \* \* \* under guardianship as an incompetent."

No statute of Iowa declares a marriage such as that here involved either void or voidable. Some other sections of the Iowa code throw some light on the construction of the sections quoted above. Section 10436 declares by whom a marriage may be solemnized and provides that, among others, a justice of the peace may perform that function. Sections 10433 and 10440 provide for a complete and accurate return to the officer issuing the license of the facts with respect to the marriage by the person solemnizing the same. While § 10435 provides a penalty for the wrongful procuring and issuing of a license for the marriage of minors, no such penalty is prescribed in cases such as the one at bar. Presumably, in such cases the parties procuring the license are subject to the penalties for perjury. Section 10437 provides that "marriages solemnized, with the consent of the parties," in any other manner than authorized by the statutes shall be "valid." Section 10445 declares that the only marriages which are "void" are those between persons bearing certain relationships to each other.

The court below ruled against the contentions of the guardian *ad litem* and found that plaintiff had mental capacity to contract the marriage; that, notwithstanding the illegality of the method of obtaining the marriage license, the parties were legally married; that "they are a devoted and happy couple; that the plaintiff, now in the sunset of his life, is happy, contented, and well-cared for"; and that the guardian *ad litem* was not entitled to any allowance for expenses and attorney's fees for bringing the action.

In this court the parties raise the same contentions which they did below.

■ A person under guardianship is conclusively presumed to be incompetent to make a valid contract or disposition of his property. "This rule is based upon convenience and necessity, for the protection of the guardian, and to enable him properly to discharge his duties as such." Thorpe v. Hanscom, 64 Minn. 201, 205, 66 N. W. 1, 2. When the reason for the rule ceases the rule does not

apply. Convenience and necessity of the guardian extend only to those acts which he is authorized to do on behalf of the ward, such as managing and controlling his property and his estate. The guardian's authority does not extend to the marriage of his ward. Banker v. Banker, 63 N. Y. 409. The appointment of a guardian disables the alleged incompetent only from making contracts which relate to his estate, but not other kinds of contracts. One who has been adjudged an incompetent may contract a valid marriage if he has in fact sufficient mental capacity for that purpose. Payne v. Burdette, 84 Mo. App. 332; Banker v. Banker, 63 N. Y. 409, *supra;* Weinberg v. Weinberg, 255 App. Div. 366, 8 N. Y. S. (2d) 341. In Roether v. Roether, 180 Wis. 24, 28, 191 N. W. 576, 577, 28 A. L. R. 631, 633, and annotation, holding that a person under guardianship as an incompetent may have mental capacity to contract a marriage, the court succinctly expressed the thought in the following language:

"The finding of mental incompetency to manage his estate in 1916 can remain unchallenged for two reasons, stated in Re Farr, 169 Wis. [451], 453, 171 N. W. 952, as follows: 'First, because "sanity" and "competency to manage an estate" are not synonymous terms. A man may be sane in the sense that it is not necessary to incarcerate him in an asylum, and yet be incompetent to manage an estate, even though he be not a spendthrift or a drunkard. And, second, because a condition of sanity or competency to manage an estate is not a permanent, unchangeable condition. A man may be sane or competent at one time, and be insane or incompetent at a future time.' "

*Cf.* Succession of Baltimore (La. App.) 176 So. 684, and Ross v. Ross, 175 Okl. 633, 54 P. (2d) 611.

An adjudication of incompetency by the probate court is evidence, but not conclusive, in any litigation to prove the mental condition of the alleged incompetent at the time the judgment was rendered or at any past time during which the judgment finds the person to be incompetent. Schultz v. Oldenburg, 202 Minn. 237,

277 N. W. 918; Champ v. Brown, 197 Minn. 49, 266 N. W. 94; McAllister v. Rowland, 124 Minn. 27, 144 N. W. 412, Ann. Cas. 1915B, 1006. In a particular case the question of mental competency to contract marriage is a fact question. So it was here.

■ The validity of a marriage is to be determined by the law of the place where it was celebrated—by the *lex loci contractus,* or *celebrationis.* Von Felden v. Von Felden, 212 Minn. 54, 2 N. W. (2d) 426 (a marriage in Iowa of residents of Minnesota). The statutes of Iowa therefore govern as to the validity of the marriage here involved.

■ We shall assume, without so deciding, that under the law of Iowa full recognition would be accorded to the probate court's adjudication that plaintiff was incompetent. Section 10427 of the Iowa code is the same in effect as the first sentence of Minn. St. 1941, § 517.01 (Mason St. 1927, § 8562). Under both statutes a person who has mental capacity to contract is capable of entering into the marriage relation.

In Love v. Love, 185 Iowa 930, 171 N. W. 257, citing our decision in Hulett v. Carey, 66 Minn. 327, 69 N. W. 31, 34 L. R. A. 384, 61 A. S. R. 419, the Iowa court construed the statute of that state providing that a marriage requires the consent of the parties capable of entering into other contracts to mean substantially the same as the first sentence of our § 517.01 (§ 8562), *supra,* to the same effect, under which the test is capacity in fact to contract. In that view a person under guardianship may have mental capacity to contract a valid marriage under the statute of Iowa. The supreme court of Iowa has held that, notwithstanding the fact that a person is under guardianship as an incompetent, he may in fact have mental capacity. In re Guardianship of Meinders, 222 Iowa 236, 268 N. W. 537; Reeves v. Hunter, 185 Iowa 958, 171 N. W. 567; McGuire v. Moorhead, 151 Iowa 25, 130 N. W. 140. Our opinion is that the rule is the same in Iowa as in other states, that a person under guardianship as an incompetent may have capacity to contract a marriage. The existence of such

capacity having been found as a fact in the instant case, plaintiff had capacity to marry under the law of Iowa.

■ The contention is that the marriage was prohibited by Code of Iowa, 1939, § 10429(5), which provides that a license shall be required before a marriage shall be solemnized, but that no license shall be issued to a person who is under guardianship as an incompetent. Neither the statute cited nor any other statute of Iowa to which our attention has been directed declares the consequences of solemnizing a marriage under a license obtained by a person under guardianship in violation of the Iowa law. The Iowa statute is very similar in its terms to our statute requiring a license for a marriage. In State v. Worthingham, 23 Minn. 528, 533, we said of our statute requiring a license for a marriage:

"Although containing provisions requiring a license in certain cases, directing how and by whom a marriage may be celebrated, and prescribing other regulations in reference thereto, the statute contains no express clause of nullity, making void a marriage contracted by mutual consent, *per verba de presenti,* unless a prior license is obtained, and a solemnization had, in accordance with its provisions. And the court is not at liberty to give it that effect by construction. * * * Under statutes of this character, as at common law, it is the established doctrine that no formal solemnization, nor any ceremony whatever, is requisite to give validity to a marriage contract."

So far as we have been informed, the supreme court of Iowa has not passed on this question. The rule which generally prevails, and which we think is the rule in Iowa, is that the validity of a marriage is not affected by the fact that the license therefor was procured by fraud or perjury. Switchmen's Union v. Gillerman, 196 Mich. 141, 162 N. W. 1024, L. R. A. 1918A, 1117; In re Hollopeter, 52 Wash. 41, 100 P. 159, 21 L.R.A.(N.S.) 847, 17 Ann. Cas. 91, 132 A. S. R. 952; 35 Am. Jur., Marriage, p. 195, § 23; 38 C. J., p. 1307, § 74. In State v. White, 4 Iowa 449, it was held that a person solemnizing a marriage without the parties

thereto having obtained a license is guilty of a misdemeanor and is to be dealt with accordingly and in no other manner. The view that the general rule, that marriages solemnized under a license procured by fraud or by perjury, prevails in Iowa finds statutory support in the provisions of the Iowa Code, 1939, § 10437, that marriages solemnized in Iowa in any manner other than authorized by the statutes of that state shall be "valid." We so hold.

■ Ordinarily a guardian *ad litem* is entitled to reasonable compensation and expenses for litigation conducted on behalf of his ward. The allowance is in the sound discretion of the trial court. The litigation should be undertaken in good faith and with reasonable caution for the benefit of the ward. The right to compensation and expenses is not conditioned upon the success of the litigation. Where, however, there was no reasonable ground for the litigation, a guardian *ad litem* is not entitled to compensation or expenses. Libby v. Todd, 194 Mass. 507, 80 N. E. 584; 31 C. J. pp. 1144-1145, § 307. Implicit in the court's denial here of compensation and expenses is a finding that there was no reasonable ground for the present litigation. That finding is supported by the record and must be affirmed.

The marriage in the instant case, having been contracted 19 days prior to the enactment of L. 1941, c. 459 (the second sentence of Minn. St. 1941, § 517.01), providing that marriages subsequent to its passage not solemnized under a license and full ceremony as therein provided "shall be null and void," is not affected by the provisions thereof.

Our views of the law of Iowa are stated with a full realization of the delicacy of the task of saying what the law of a foreign jurisdiction is.

Affirmed.

THOMAS GALLAGHER, JUSTICE (concurring specially).

I concur in the result with the exception of that portion of the opinion relating to denial of compensation and expenses for the litigation conducted here by the guardian *ad litem*. Since the questions presented were doubtful, I am of the opinion the liti-

470

gation was undertaken in good faith and that a reasonable allowance should have been made for attorney's fees and costs.

MR. JUSTICE YOUNGDAHL took no part in the consideration or decision of this case.