# IN RE ESTATE OF CLARA G. FITTERLING KINKEAD. BESSIE M. SEELEY AND ANOTHER v. THEODORE C. ERRINGER.[1]

March 20, 1953.

No. 35,866.

[1]Reported in 57 N. W. (2d) 628.

28

*Bundlie, Kelley, Finley & Maun,* for appellants.

*Thompson, Hessian, Fletcher & McKasy* and *John P. Somers,* for respondent.

CHRISTIANSON, JUSTICE.

This is an appeal from a judgment on the pleadings in favor of respondent, Theodore C. Erringer, affirming an order of the probate court denying the petition of appellants, Bessie M. Seeley and Minnie T. Fitterling Sharpe, to admit to probate an alleged lost or destroyed will of decedent, Clara G. Fitterling Kinkead.

Appellants' statement of propositions of law and fact in the district court made the following allegations of fact material to this

appeal:[2] Respondent and Mildred T. Erringer were married in this state on December 30, 1943, and were divorced in this state by a decree dated October 9, 1944. Less than five months later, on March 3, 1945, respondent, without disclosing any information about his divorce, procured an affidavit from one W. F. Sharpe stating in part that respondent had not been divorced within one year. He then used Sharpe's affidavit to induce an official of the state of Iowa to issue a marriage license to himself and decedent. On the same date respondent and decedent, who were residents and citizens of this state, entered into a purported marriage in Iowa. After the purported marriage was performed, they returned to this state and resided here until decedent's death on December 14, 1946.

Approximately two years before her purported marriage to respondent, decedent had duly executed a will leaving the bulk of her estate to the three children of appellant Seeley and the three children of appellant Sharpe and appointing both appellants executrices of her will. Following decedent's death, respondent petitioned for general administration of her estate but did not disclose the existence of her will or the foregoing facts relative to his marriage to her. The probate court, on March 15, 1948, found that decedent had died intestate and that respondent was her only heir-at-law and decreed that all of her personal property and title to all of her real estate be assigned to and vested in respondent. Some 20 months later, appellants petitioned the probate court to prove decedent's lost or destroyed will.[3] The court denied the petition, and appellants appealed to the district court which affirmed the order of the probate court. This appeal is from the judgment of the district court.

---

[2]Since the district court ordered judgment on the pleadings in favor of respondent, the facts alleged in appellants' statement must be taken as true for the purpose of this appeal. See, State ex rel. City of Minneapolis v. Minneapolis St. Ry. Co. 238 Minn. 218, 223, 56 N. W. (2d) 564, 567, and cases there cited.

[3]M.S.A. 525.261, relating to lost and destroyed wills, provides:

"No such will shall be established unless it is proved to have remained unrevoked * * *."

The question presented is whether the purported marriage between respondent and decedent in Iowa, which was contrary to the provision of M. S. A. 517.03 that no marriage shall be contracted within six months after either party has been divorced from a former spouse, revoked decedent's will under § 525.191, which provides that if a testator marries after making a will the will is thereby revoked.

1–2–3. The validity of a marriage normally is determined by the law of the place where the marriage is contracted.[4] If valid by that law the marriage is valid everywhere unless it violates a strong public policy of the domicile of the parties.[5]

Turning first to the local law of Iowa, where the purported marriage in the instant case was contracted, we find certain statutes which must be considered in determining whether the marriage was valid under the law of that state.

Iowa Code Ann. 595.3 provides:

"Previous to the solemnization of any marriage, a license for that purpose must be obtained from the clerk of the district court of the county wherein the marriage is to be solemnized. Such license must not be granted in any case: [here follows a list of circumstances, none of which is involved in the instant case]."

Iowa Code Ann. 595.4 provides:

"When an application for a license is made the clerk shall require at least one affidavit from some competent and disinterested person, stating such facts as to age and qualification of the parties as the clerk may deem necessary to determine the competency of the parties to contract a marriage."

[4]Johnson v. Johnson, 214 Minn. 462, 8 N. W. (2d) 620; Von Felden v. Von Felden, 212 Minn. 54, 2 N. W. (2d) 426; Lando v. Lando, 112 Minn. 257, 127 N. W. 1125, 30 L.R.A. (N. S.) 940; see, In re Estate of Ommang, 183 Minn. 92, 95, 235 N. W. 529, 531.

[5]See, Meisenhelder v. C. & N. W. Ry. Co. 170 Minn. 317, 213 N. W. 32, 51 A.L.R. 1048; 2 Beale, Conflict of Laws, § 129.1; Goodrich, Conflict of Laws (3 ed.) § 117, p. 361.

No Iowa statute declares what effect obtaining the license by a fraudulent affidavit has upon the validity of the marriage, and we have found no Iowa case declaring the effect. Thus in applying these Iowa statutes we must attempt to predict how the supreme court of Iowa would interpret them. It is generally held that, in the absence of a legislative declaration to the contrary, the validity of a marriage is not affected by the fact that the marriage license was obtained by fraud or perjury,[6] and we have no reason to believe that the Iowa court would interpret the Iowa statutes in any other way. See, Johnson v. Johnson, 214 Minn. 462, 468, 8 N. W. (2d) 620, 623. We therefore hold that, under Iowa law, the marriage in the instant case was not invalidated by fraud in obtaining the license.

Iowa Code Ann. 598.17 provides:

"In every case in which a divorce is decreed, neither party shall marry again within a year from the date of the filing of said decree unless permission to do so is granted by the court in such decree."

Iowa Code Ann. 598.18 provides:

"Any person marrying contrary to the provisions of section 598.17 shall be deemed guilty of a misdemeanor and punished accordingly."

We are of the opinion that the supreme court of Iowa, if faced with the question whether these statutes apply to the marriage in the instant case, would hold them inapplicable. In Lee v. Lee, 150 Iowa 611, 130 N. W. 128, the Iowa court found it unnecessary to decide whether the Iowa statute applied to every decree of divorce, whether obtained in Iowa or elsewhere, but the court said that, if it were necessary to decide the question, it would have difficulty in applying the statute to a decree obtained in another state. The same year the Iowa court, in Dudley v. Dudley, 151 Iowa 142, 130

---

[6]Christensen v. Christensen, 144 Neb. 763, 14 N. W. (2d) 613; In re Hollopeter, 52 Wash. 41, 100 P. 159, 21 L. R. A. (N. S.) 847; see, Switchmen's Union v. Gillerman, 196 Mich. 141, 162 N. W. 1024, L. R. A. 1918A, 1117; 35 Am. Jur., Marriage, § 23; 55 C. J. S., Marriage, § 25a.

N. W. 785, 32 L.R.A. (N.S.) 1170, decided that an order in a divorce decree granting custody of a child to the divorced wife would not be modified merely because she had married another man in Nebraska shortly after the divorce, contrary to the terms of both the Iowa and Nebraska statutes.[7] The court said that she was not guilty of any violation of law because the Iowa statute did not apply to a marriage in Nebraska and, more important to the question now being considered, because the Nebraska statute did not apply where the decree of divorce was not entered in that state. In Webster v. Modern Woodmen, 192 Iowa 1376, 186 N. W. 659, a woman who had been divorced in Illinois married another man in Iowa within a year. At the time of their marriage both were domiciled in Iowa. The opinion deals primarily with the question whether the Illinois statute made the marriage void, but in the course of its opinion sustaining the validity of the marriage the court said that it was not made void by the Iowa statute. This decision was subsequently followed in Pickard v. Pickard, 241 Iowa 1307, 45 N. W. (2d) 269, where a marriage was held valid upon similar facts.

Although the Iowa supreme court has not directly passed upon the precise question presented here, the above cases indicate quite clearly the court's attitude toward the Iowa statute. In view of these cases, we conclude that the Iowa statute (Iowa Code Ann. 598.17) is inapplicable to the marriage in the instant case because respondent's prior divorce was granted in Minnesota and not in Iowa. Furthermore, the Iowa court by way of dicta has indicated that even where applicable their statute does not render void a marriage which is

[7]Neb. Comp. Stat. (Cobbey's 1907) § 5369, provides:

"It shall be unlawful for any person who shall obtain a decree of divorce to marry again during the time allowed by law for commencing proceedings in error or by appeal for the reversal of such decree, and in case such proceedings shall be instituted, it shall be unlawful for the defendant in error or appellee to marry again during the pendency of such proceedings, and a violation of this act shall subject the party violating it to all the penalties of other cases of bigamy." (Since amended, see Neb. Rev. Stat. [1943] § 42-340.)

in violation thereof. See, Farrell v. Farrell, 190 Iowa 919, 925, 181 N. W. 12, 15; Webster v. Modern Woodmen, 192 Iowa 1376, 1379, 186 N. W. 659, 660. Thus we conclude that the marriage was valid according to the local law of Iowa.

■ We must next determine whether there is any public policy of this state strong enough to invalidate a marriage contracted elsewhere by persons domiciled here when the marriage was valid according to the local law of the place where it was contracted but violated this state's prohibition against contracting a marriage within six months after either party has been divorced from a former spouse.

This prohibition has been held not to make void a marriage contracted within this state in violation of it. State v. Yoder, 113 Minn. 503, 130 N. W. 10, L. R. A. 1916C, 686; see, Reynolds v. Reynolds, 171 Minn. 340, 214 N. W. 650. In State v. Yoder, *supra,* a prosecution for bigamy, defendant, who had been divorced in North Dakota, remarried his former wife in this state within less than four months. They later separated and, about one year after his divorce, defendant married another woman in this state without getting a second divorce from his first wife. Defendant contended that his second marriage to his first wife was an absolute nullity because contracted in violation of this state's prohibition against marriage within six months of divorce and that therefore he was not already married at the time of his last marriage within this state. This court affirmed an order overruling defendant's demurrer to the indictment. Defendant's second marriage to his first wife was held valid for three reasons. First, the far-reaching ramifications of treating a marriage as a nullity forbid that it should be held invalid without a decree of dissolution unless it is expressly declared void by statute. Second, the fact that the legislature in another section[8] expressly declared certain prohibited marriages absolutely void leaves a necessary inference that all other prohibited marriages should be valid until set aside by a decree of a competent court. Third, the marriage could not have been an absolute nullity be-

[8]M. S. A. 518.01.

cause it could have been ratified, confirmed, or made valid by cohabitation after the six months had expired.

Appellants correctly point out that since 1941, when common-law marriages were abolished in this state,[9] cohabitation will not make a marriage valid, and therefore the third reason for holding the marriage valid in the Yoder case is no longer sound. We do not agree, however, with appellants' contention that this destroys the authority of the case. The other two reasons for the decision are still sound and, in our opinion, are independently sufficient to uphold the result. These same two reasons are applicable when the validity of a marriage is questioned in proceedings to probate a will as well as when questioned in a bigamy prosecution. In the absence of a statute expressly declaring a marriage in violation of the six months' provision of § 517.03 void, such marriage, not having been declared invalid in a proceeding instituted for that purpose, cannot be collaterally attacked in proceedings to probate a will.

Decisions from several other jurisdictions construing statutes much like our own support us in our conclusion.[10] Admittedly, decisions from still other jurisdictions have held marriages void when contracted in violation of their statutes restricting marriage after a divorce of one of the parties. The variety of statutes under which the latter were decided would make it unprofitable for us to discuss the factors which, in our opinion, distinguish most of them from the instant case.[11] Those which cannot be distinguished we decline to follow.

Moreover, some of the jurisdictions which would hold such marriages void if contracted within their own boundaries nevertheless

---

[9]L. 1941, c. 459, which amended § 517.01.

[10]Mason v. Mason, 101 Ind. 25; Opdyke v. Opdyke, 237 Mich. 417, 212 N. W. 95; Woodward v. Blake, 38 N. D. 38, 164 N. W. 156, L. R. A. 1918A, 88; Ex parte Castro, 115 Tex. 77, 273. S. W. 795.

[11]The various forms which the statutes take is discussed in Note, 36 Va. L. Rev. 665.

hold them valid when contracted elsewhere if they are valid where contracted.[12] Since we do not hold such marriages void even when contracted here, we necessarily will not hold them void when, as in the instant case, they are contracted elsewhere.

■ Appellants, however, contend that marriages within six months after either party has been divorced from a former spouse are now expressly declared void by § 517.01, which provides:

"Marriage, so far as its validity in law is concerned, is a civil contract, to which the consent of the parties, capable in law of contracting, is essential. *Lawful marriage hereafter may be contracted only when a license has been obtained therefor as provided by law and when such marriage is contracted in the presence of two witnesses and solemnized by one authorized, or whom the parties in good faith believe to be authorized, so to do. Marriages subsequent to April 26, 1941, not so contracted shall be null and void.*" (Italics supplied.)

The part of the section italicized was added by L. 1941, c. 459. Appellants argue that the prohibition by § 517.03 of marriages within six months after either party has been divorced from a former spouse makes the parties incapable in law of contracting marriage. They argue further that the last sentence of § 517.01, by reference to the first sentence of that section, expressly declares null and void those marriages not consented to by parties capable in law of contracting.

As we construe the 1941 amendment, it was not intended to change the law with respect to marriages prohibited by § 517.03. To read the amendment as appellants read it would necessarily mean that all marriages in violation of § 517.03 are expressly declared null and void, since all of the prohibitions of that section would make the parties equally incapable of contracting marriage.[13]

[12]Estate of Wood, 137 Cal. 129, 69 P. 900; Van Voorhis v. Brintnall, 86 N. Y. 18, 40 Am. R. 505; State v. Shattuck, 69 Vt. 403, 38 A. 81, 40 L. R. A. 428.

[13]In addition to prohibiting marriages within six months after divorce, § 517.03 provides:

"No marriage shall be contracted while either of the parties has a

Such a construction would make a shambles of §§ 518.01 to 518.05, where the legislature, in providing for annulment of certain marriages, has carefully distinguished between prohibited marriages which are absolutely void, prohibited marriages which are void only from the time they are adjudged nullities, and prohibited marriages which shall not be adjudged nullities. That the legislature would emasculate these long-established statutory provisions by implied amendment or repeal is not lightly to be inferred. We find nothing in the 1941 amendment to § 517.01 which indicates that the legislature had any intent to do so. In our opinion, the express declaration of nullity in the last sentence refers only to marriages not contracted according to the next preceding sentence.

■ Appellants contend that § 517.01 declares the marriage here null and void even though interpreted as we have interpreted it. They assert that the provision that "Lawful marriage hereafter may be contracted only when a license has been obtained therefor as provided by law" requires Minnesota domiciliaries who are married elsewhere to obtain a license as provided by the laws of that place and that the license in the instant case was not obtained as provided by law but was obtained only upon fraudulent misrepresentation that respondent had not been divorced within one year. Their argument implies that the 1941 amendment to § 517.01 stating that marriages not so contracted are null and void is a legislative expression of a public policy strong enough to invalidate the marriage even if, as we have held, the marriage was valid under Iowa local law.

In the absence of a legislative declaration to the contrary, the validity of a marriage is not affected by the fact that the marriage license was obtained by fraud or perjury.[14] It is our opinion that the sole purpose of the 1941 amendment was to abolish common-

husband or wife living; * * * nor within six months after either was a party to a marriage which has been adjudged a nullity, * * *; nor between parties who are nearer of kin than second cousins; whether of the half or whole blood, computed by the rules of the civil law; nor between persons either one of whom is epileptic, imbecile, feeble-minded, or insane; nor between persons one or both of whom are under 15 years of age."

[14]See footnote 6, *supra.*

law marriages contracted after April 26, 1941,[15] and that the amendment is not applicable to ceremonial marriages for which a license has been obtained although it was obtained improperly. Since it is our opinion that the legislature did not intend by the amendment to invalidate either the license or the marriage solemnized thereunder where the license was obtained by fraud or perjury, it follows that the amendment expresses no public policy which invalidates the marriage in the instant case.

■ Finally appellants contend that, irrespective of the *validity* of the marriage in Iowa, this court should not give the marriage the *effect* of revoking decedent's will under § 525.191. Their argument is that the legislature, in using the word "marries" in § 525.191, could not have contemplated a marriage which § 517.03 expressly says shall not be contracted. However, there are many more statutes whose effects, equally with that of § 525.191, depend upon the existence of the marriage status.[16] Appellants' argument could be applied to all of them as well as to the one section involved here, but to refuse to give effect to all of these statutes because the marriage violated § 517.03 would be tantamount to declaring the marriage void in this state. The very fact that so many matters do depend upon the existence of the marriage status is one of the reasons we have refused to hold the marriage void in the absence of any clear legislative mandate, and, if we are to hold it valid, we see no reason to single out the particular area of the revocation of wills in which to deny effect to the marriage.

Appellants argue that by giving effect to the marriage we are denying effect to the legislative prohibition against marriage within six months of the divorce of one of the parties. However, § 517.08 provides that the clerk shall examine upon oath the party applying for the marriage license relative to the legality of such contemplated marriage, and § 517.06 authorizes the person who is to perform the marriage to make a like examination upon oath. Thus, a party who

[15] Cf. Baker v. Baker, 222 Minn. 169, 171, 23 N. W. (2d) 582, 583; Note, 26 Minn. L. Rev. 213, 223.

[16] See M. S. A. index, titles "marriage" and "husband and wife."

swears falsely that no legal impediment to the marriage exists may subject himself to the penalties of perjury. See, State v. Randall, 166 Minn. 381, 208 N. W. 14. Moreover, where fraud is involved, the innocent party under certain circumstances may have the marriage annulled. See, Reynolds v. Reynolds, 171 Minn. 340, 214 N. W. 650; cf. Behsman v. Behsman, 144 Minn. 95, 174 N. W. 611, 7 A. L. R. 1501.

For the reasons hereinbefore stated, we hold that under § 525.191 the will in question was revoked by decedent's subsequent marriage to respondent. It follows as a logical consequence therefrom that the judgment of the district court affirming the order of the probate court disallowing the alleged lost or destroyed will of decedent to probate should be affirmed.

Affirmed.