## STATE v. W. KING RICHARDS.[1]

November 16, 1928.

No. 26,969.

**Annulment of accused's first marriage after his second did not relieve him of the crime of bigamy.**

In a prosecution for bigamy the first marriage relied upon by the state was annulled by judgment after the offense charged against defendant. But the annulment was upon grounds which made the first marriage voidable only and not absolutely and inherently void. Therefore defendant's status after his first marriage and at the time of his second was already that of a married man, and the subsequent annulment of the first marriage did not relieve his second of its bigamous character.

Bigamy, 7 C. J. § 12 p. 1161 n. 59.

See 3 R. C. L. 799; 1 R. C. L. Supp. 895; 7 R. C. L. Supp. 105.

Defendant appealed from a judgment of the district court for Blue Earth county, Harry A. Johnson, J. convicting him of the crime of bigamy. Affirmed.

*A. R. Pfau III,* for appellant.

*G. A. Youngquist,* Attorney General, *James E. Markham,* Deputy Attorney General, and *Frank E. Morse,* County Attorney, for the state.

[1]Reported in 221 N. W. 867.

STONE, J.

Convicted of bigamy, defendant appeals from the judgment.

He was first married in South Dakota, July 30, 1925. Notwithstanding and on July 11, 1927, defendant went through a marriage in form at Tonawanda, New York, with a second wife. She returned with him to this state and the two cohabited as husband and wife at Mankato. That cohabitation resulted in the charge of bigamy and defendant's trial and conviction thereof under G. S. 1923, § 10180.

The facts are not in dispute, and the only error now urged is the exclusion from evidence of a South Dakota judgment annulling the first marriage. That decree was made and filed by the circuit court of Pennington county, South Dakota, November 8, 1927. The bigamous cohabitation had taken place in this state previously. The information was made November 9 and the case came on for trial November 29, 1927. The complaint in the South Dakota annulment action, wherein this defendant was plaintiff and his first wife the defendant, alleged as grounds of annulment that at the time of his first marriage defendant was under the age of consent; that the marriage was contracted without the consent of his parents or guardian and also that at the time of the said marriage defendant was "of unsound mind, and so remained for more than one (1) month subsequent to the said marriage;" and that during all of the time that defendant and his first wife cohabited he, defendant, "was incapable of contracting, understanding or performing a marriage contract." The decision went for defendant (plaintiff in the annulment action) upon the grounds so alleged, and was "that the said marriage contract * * * was and is voidable, and that the plaintiff is entitled to judgment herein annulling and setting aside the said marriage." The judgment entered "accordingly" was that defendant's first marriage was thereby "cancelled, annulled and set aside, and held for naught."

The argument for defendant is that by reason of the annulment of his first marriage he was not in fact married at the time of the bigamous cohabitation charged against him and therefore that he

was not and could not have been guilty of bigamy. The very proper premise is that there can be no conviction of bigamy without proof of a valid and existing first marriage. But from there on the argument fails because at the time of the offense charged against him, after his first marriage and until Novmber 8, 1927, when it was annulled, defendant occupied the status of a married man. That is the determinative thing.

The distinction is recognized by statute in South Dakota, as it is everywhere, between void and voidable marriages. Rev. Code S. D. 1919, § 107. Our own statute makes the same distinction although not along the same lines. See G. S. 1923, §§ 8580, 8581. The South Dakota judgment did not determine that defendant's first marriage was *void*, inherently, absolutely and for all purposes or at all, but only that it was *voidable*. It was annulled not because of any fatal impediment, such as consanguinity within the prohibited degrees, which renders a marriage void everywhere and for all purposes, but because rather and only of reasons giving defendant the right, which he asserted, to have it annulled.

It follows that at the time of his bigamous cohabitation in this state defendant occupied the status of a married man. Beggs v. State, 55 Ala. 108; Cooley v. State, 55 Ala. 162; State v. Smith, 101 S. C. 293, 85 S. E. 958, Ann. Cas. 1917C, 149; State v. Sellers, 140 S. C. 66, 134 S. E. 873; Barber v. People, 203 Ill. 543, 68 N. E. 93; State v. Cone, 86 Wis. 498, 57 N. W. 50; State v. Parker, 106 N. C. 711, 11 S. E. 517; People v. Spitzer, 57 Cal. App. 593, 208 P. 181. In State v. Yoder, 113 Minn. 503, 505, 130 N. W. 10, L. R. A. 1916C, 686, it was held that where a marriage is absolutely void and therefore a nullity ab initio its validity may be impeached in any court, whether the question arises directly or collaterally, but that, quoting Schouler, Domestic Relations, § 14, "a voidable marriage is valid for all civil purposes until a competent tribunal has pronounced the sentence of nullity in direct proceedings instituted for that purpose." Marriage in this respect is like any other contract and a voidable marriage like any other contract that is voidable, except that the marriage contract cannot be effectually dis-

affirmed, that is rescinded, without judicial pronouncement of its nullity. The rights it creates and the status it establishes continue until that determinative act. Then, and not until then, and from that time only, the parties are restored to their original status. The marriage status continues until the act which terminates it, and that must be the judgment of annulment pronounced by a competent court. As to property rights and everything else the parties are then restored to their original position, but the fact forever remains that while the marriage was in effect it made the status of the parties that of married persons.

The cases cited for defendant do not hold otherwise. Each must be read with an understanding of the defect in the first marriage and its effect upon that contract as finally determined by the decree of annulment. For example, in Taylor v. White, 160 N. C. 38, 40, 75 S. E. 941, L. R. A. 1916C, 704, the defect made the marriage void, not merely voidable, and the judgment of annulment accordingly was that it had been absolutely "void ab initio" and that "there never was any valid marriage" between the parties to the first ceremony. The judgment here involved goes to no such length and annulled defendant's first marriage for defects which, under the controlling law of South Dakota, did not render it void, ab initio or at all, but only voidable at the suit of the husband.

Judgment affirmed.