**RASKE v. RASKE et ux.**

Civ. A. No. 3231.

United States District Court
D. Minnesota, Fourth Division.

Aug. 1, 1950.

Charles F. Noonan, Henry Halladay and Horace Hitch, all of Minneapolis, Minn. (Dorsey, Colman, Barker, Scott & Barber, of Minneapolis, Minn., of counsel), for defendant Minnie Raske, in support of the motion.

Ben W. Palmer, of Minneapolis, Minn., for plaintiff, in opposition thereto.

NORDBYE, Chief Judge.

The above cause came before the Court on a motion for an order granting defendant Minnie Raske a new trial pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

This action was one for alienation of affections. Plaintiff was the wife of defendants' son. The action was tried by this Court and a jury at the March, 1950, general term of court. The Court directed a verdict in favor of the father, defendant Henry Raske. But the jury returned a verdict in favor of plaintiff against defendant Minnie Raske, her husband's mother, in the amount of $7,000. Defendant Minnie Raske now moves for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure upon the grounds that the verdict was not justified by the evidence, was excessive, and appears to have been given under the influence of passion and prejudice. She also moves for vacation of

the judgment and for a new trial pursuant to Rule 60 of the Federal Rules of Civil Procedure upon the ground of newly discovered evidence. The motion was submitted on June 16, 1950.

Consideration of the grounds urged by defendant justifies detailed discussion only of the question concerning excessive damages. Whether a new trial should be granted upon the grounds that the evidence is insufficient is in the discretion of the trial court. Yellow Cab Co. v. Earle, 8 Cir., 1921, 275 F. 928. Here, the evidence presented by plaintiff included letters written by the defendant Minnie Raske to plaintiff's husband during the period of their marriage relevant to this action. Those letters contained many derogatory remarks and exhortations concerning plaintiff. Minnie Raske testified that she did not like plaintiff. Plaintiff's husband's interest in her began to wane, plaintiff testified, after he received these letters. Viewing the evidence as a whole, the jury reached a decision which reasonable men could reach upon the liability question and which was not unreasonable under the Court's instructions to which defendant took no exceptions. Because sufficient evidence supports the liability determination, the question of passion and prejudice becomes somewhat moot here. Counsel for defendant did not press his claim of passion and prejudice strongly on oral argument. The trial was singularly free from any circumstances or incidents which could form a basis for any such claim.

Defendant's claim of newly discovered evidence is based upon the premise that since the trial of this action the marriage between plaintiff and her husband has been annulled through a legal action commenced by plaintiff's husband, but not tried, prior to the trial of this action. But the possibility of such a decree was known to defendant when this action was tried. Defendant knew that the annulment action was pending. The theory of newly discovered evidence generally does not embrace evidence which is created after the trial. In any event, defendant made no effort to continue the instant case until the annulment action had been tried and its results thereby made available for this case. Diligence in attempting to make the evidence from the annulment action available for this action when it was first tried has not been shown. Due diligence to obtain the evidence must be shown to justify a new trial upon the basis of newly discovered evidence.

Likewise, the result of the annulment action is itself not particularly helpful to defendant. The fact that the action was pending was made clear to the jury on the trial of this action. Its result neither confirms nor rejects the finding of alienation of affections in the instant case, though one might logically argue that the annulment suit ensued from defendant's wrongful conduct. Defendant's argument that plaintiff's husband now would be a competent witness and could testify concerning significant facts helpful to defendant is not persuasive even if defendant's claim of his competency as a witness at a new trial is assumed to be correct. The substance of his testimony is not submitted to the Court, so this Court is not in a position to find that his testimony would include new and material evidence rather than cumulative or immaterial evidence. Cumulative evidence generally cannot be the basis for a new trial.

Defendant's counsel suggests that defendant Minnie Raske could have brought an action to annul the marriage because the license was obtained and the marriage contracted by her son without his parents' consent while he was a minor. See Minn.Stat.Ann. § 517.08. Although the soundness of the argument is assumed without deciding the question, the existence of a legal means to accomplish a given result obviously does not justify the use of illegal means to accomplish the same result. The suggestion apparently is advanced in support of the contention that a new trial would present a different measure of damages because of this right. But in so far as this assumed right, standing alone, may be a factor in determining the measure, or amount, of damages it presents a legal

question which could have been presented to this Court when this action was tried. It is not a fact and therefore not new evidence. At most, it would be a newly discovered legal right. In so far as the effect to be given the assumed right may depend upon the favorable results obtained by the son's action (and thereby create an inference that the mother's action could have obtained the same result), the important factor then is the fact of annulment, not who possesses the right to annul the marriage. For the reasons noted above, the fact of annulment after this case was tried does not present newly discovered evidence which would justify a new trial. If the accomplished fact of annulment does not entitle defendant to a new trial, obviously she is not entitled to a new trial merely because, if she had exercised her assumed right, she might have been able to obtain the same result. The suggested premise of defendant relies upon retroactive application of a potential right which never was exercised and which now never can be exercised. It seeks to activate a right which has expired.

Moreover, a conclusion that no damages and therefore no cause of action exist in favor of plaintiff for alienation of affections because defendant assumedly possessed the right to annul the marriage assumes that the marriage was void ab initio or at least from the time the defendant might have decided to bring such an action. The Minnesota law holds that the marriage was valid until annulled. State v. Richards, 1928, 175 Minn. 498, 221 N.W. 867; Northrup v. St. Paul Fire Dept. Relief Ass'n, 1935, 193 Minn. 623, 259 N.W. 185. Compare also Johnson v. Johnson, 214 Minn. 462, at page 469, 8 N.W.2d 620, and therefore prevents the conclusion proposed.

The only question which merits detailed attention is the question of excessive damages. As the Court instructed the jury, the value of the affections, society, companionship and assistance of one's husband is not easily determined in money. Having concluded that the evidence supports the jury's determination of liability, I am entirely aware that the Court should be hesitant to disturb the jury's appraisal of the loss in absence of unusual persuasive circumstances. But this case in a rather singular manner does present a certain factual background which in some aspects approaches the bizarre and which strongly bears upon the reasonableness of the verdict, so that, in the interest of justice, a modification of the jury's appraisal of the damages is required.

Plaintiff had known her husband, Earl Raske, for approximately ten days before their marriage. She had been contemplating marriage with a young man in Kansas who had financed her trip to that State in order that she might meet his family, but en route to Kansas she came to Minnesota to visit the Raskes. The evidence indicates that she was a rather aggressive, sophisticated New York City girl, twenty-one years of age, and the defendant's son was an inexperienced nineteen-year old farm boy, who had never been far from his parents' farm where he was employed at the time. Admittedly, the marriage was hastily and secretly arranged. Shortly after the marriage, plaintiff went to Kansas to meet the family of her former fiance and to inform the latter of her marriage to Earl. Almost as soon as she returned to Minnesota, plaintiff's husband left to join the Army without informing plaintiff or making any attempt to contact her thereafter. So far as the evidence indicates, he also said nothing to his parents of his plans. Moreover, it is not shown that the parents had anything to do with this sudden cooling of love's recent ardor. They did not know of the marriage at that time. Whatever the cause may have been for his sudden exit, it is evident that Earl had no desire to inform his recent bride of his whereabouts. It was entirely due to plaintiff's resourcefulness and persistence that this young couple were for a time reunited and lived together off and on while young Raske was at one or more of the army camps in this country. But when Earl reached Germany and was away from the plaintiff, it seems evident from his attitude towards her that their association in this country had not resulted in removing some of the doubt in Earl's mind as to whether he had acted wisely in contracting this marriage. The jury necessarily found

352

that plaintiff's husband was influenced by his mother's letters and that her intentional acts, in writing the way she did, were the controlling cause which led to the estrangement. But it is difficult to believe that there was ever any real depth or substance in Earl's love and affection for plaintiff. At least, it would appear that he regretted his marriage shortly after it was consummated, otherwise why his hasty departure into the Army? I have great doubt that that which plaintiff lost by defendant's wrongful acts can justify the amount of damages which the jury assessed. That Earl was an easily led individual whose love for plaintiff was not too enduring is an entirely reasonable, if not an impelling, conclusion in view of all the evidence.

The amount of damages to be awarded in an alienation suit must necessarily be determined in light of the particular facts of each case. Here, there are so many circumstances that tend to negate the justice of the amount of the verdict returned by the jury against an intermeddling mother. Granted that the defendant was the primary cause of alienating whatever affection Earl may have had for plaintiff, but such affection was too shallow and too uncertain in its durability to justify an appraisal of $7,000 as damages for its loss. After due reflection, I have concluded that the verdict should be reduced to the sum of $4,000, and if plaintiff refuses to accept the reduction a new trial should be granted. My conclusion in requiring a reduction of the verdict or granting a new trial necessarily entails a seeming arbitrary determination of the amount of plaintiff's loss, but I cannot in good conscience do otherwise and at least my conclusion indicates my conception of that which will accomplish substantial justice between the parties, accepting as I do the jury's determination of liability. Therefore,

It is ordered: That the jury's verdict in the sum of $7,000 be reduced to the sum of $4,000, and if plaintiff files her consent to this reduction with the Clerk of this Court within twenty days after the date of this order, then the motion for a new trial will be denied; otherwise, it will be granted. An exception is reserved.