Clarence A. **KOLSTAD** and Alta A. Kolstad, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 15871.

United States Court of Appeals Ninth Circuit.

Jan. 7, 1959.

As Modified on Denial of Rehearing Feb. 3, 1959.

---

840

Cedor B. Aronow, Elmo J. Cure, Shelby, Mont., for appellants.

Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Elizabeth Dudley, Attys., Dept. of Justice, Washington, D. C., Krest Cyr, U. S. Atty., Butte, Mont., for appellee.

Before HEALY, POPE and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

An action was commenced by the United States in the District Court for the District of Montana to condemn certain lands in connection with the Tiber Dam and Reservoir in north central Montana. Several different parcels of land were joined in the action. Parcels 10 and 11 were alleged to be owned by Clarence A. Kolstad and Alta A. Kolstad, husband and wife. At the trial of the condemnation case before a jury, it developed from the testimony of appellant Clarence A. Kolstad that one portion of the property stood in his name alone, another portion of the property stood in the name of Alta A. Kolstad alone, and a third parcel stood in the name of Clarence A. Kolstad and Alta A. Kolstad as joint tenants. The Court then called a conference of counsel, out of the presence of the jury, and the Court indicated that it was its belief that three separate awards should be made covering the value of the three parcels.

It appears that property in the name of Clarence A. Kolstad consisted of 5,180.7 acres, of which the Government was condemning in this action 3,780 acres; and that the land standing in the name of Alta A. Kolstad amounted to 4,699.87 acres, of which the Government was condemning 1,831.28 acres; and that the property standing in the name of Clarence A. Kolstad and Alta A. Kolstad amounted to 7,423 acres, of which the Government was condemning 3,520 acres. Counsel for appellant contended that all of the property was farmed by Mr. and Mrs. Kolstad and their sons as a unit; that there was a partnership in

the lands to be taken; and that they were prepared to value the properties all as one unit.

At the trial (during the conference referred to above) after some further discussion, the Court indicated that it still felt the various parcels should be separately valued. However, inasmuch as counsel stated that they were not prepared to produce their evidence of value as to the separate parcels, the Court, upon the motion of appellants, granted a continuance of the trial for approximately one month. In the course of the discussion, the Court gave counsel for appellants an opportunity to present any authorities that he might have, and appellants' counsel was given a week within which to submit his memorandum containing these authorities to the Court. During the discussion it was also indicated to appellants' counsel by the Court that he might make an offer of proof if he disagreed with the position taken by the Court.

Thereupon, the jury was excused for approximately a month, until January 17, 1957. On that day the case resumed before the same jury. Appellants' counsel had filed no memorandum of authorities with the Court, and the case proceeded at that time without any offer of proof being made by counsel for the appellants.

Prior to the offering of further testimony at that time, appellants' counsel made a statement to the jury as to what he expected to prove, and in that statement stated that he expected to offer testimony as to the value of the three separate parcels of property. All counsel then proceeded upon the theory that there were three separate ownerships of

the land and the valuations of these three separate parcels were given by witnesses for all parties.

At the conclusion of the trial the jury was instructed at length that it should determine the fair market value of the whole of each of the three parcels at the time of the taking by the Government, and then determine the fair market value of the remaining portion of each parcel after the taking, and that the difference between such valuations would be what the law considers to be just compensation. At the conclusion of the instructions, appellants' counsel stated that they had no objections to the instructions of the Court.

The jury rendered a verdict, awarding compensation to Clarence A. Kolstad in the sum of $232,730. It also, in a separate verdict, awarded compensation to Clarence A. Kolstad and Alta A. Kolstad jointly in the sum of $191,024. It rendered a third verdict in favor of Alta A. Kolstad in the sum of $96,992.

Prior to the trial, the Government had deposited in the Registry of the Court approximately $233,000, and after the verdicts of the jury, a deficiency judgment was entered whereby the sum of $287,096.80 was directed to be paid into the Registry of the Court and the total sum of $551,422.10, which included interest, was directed to be disbursed to Mr. and Mrs. Kolstad. Notice of appeal was filed on April 19, 1957.

Thereafter, appellants obtained new counsel and upon November 4, 1957, filed a motion under Federal Rules of Civil Procedure, rule 60(b), 28 U.S.C.A.[1] to set aside the judgment of the Court upon the ground that the case was tried under theory of three separate ownerships

---

1. Rule 60(b) * * *

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud * * *

misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

when in truth and in fact the property was owned by the defendants as tenants in partnership, and that through surprise, mistake and excusable neglect the appellants were unable to show this ownership. The motion was also urged upon the ground that the defendants had discovered new evidence as indicated by an affidavit filed by C. A. Kolstad at the time of the filing of the motion.

Upon the hearing of the motion, appellants relied upon the transcript of the proceedings at the trial and the affidavit of C. A. Kolstad which was filed with the motion. The motion to set aside the judgment was denied by the Court and this appeal followed.

Thus, ostensibly, two separate appeals are now before this Court: (1) An appeal from the deficiency judgment; and (2) An appeal from the denial of the motion to set aside the above-referred-to judgment. Appellants' briefs set forth these three specifications of error:

1. The Court erred in denying appellants' motion to set aside the judgment.

2. The Court erred in ordering the trial to proceed on the theory of divided ownership of the land.

3. Accident and surprise, which ordinary prudence could not have guarded against in the testimony of Joe Meissner.

Specifications 1 and 3 obviously refer to appellants' motion under Rule 60(b), leaving only Specification 2 as possibly referrable only to the appeal from the deficiency judgment. Appellants have neither in their briefs nor in oral argument otherwise attempted to distinguish their appeal from the judgment from their appeal from the order denying their motion. Specification 2 is as readily referrable to the appeal from the denial of the motion as it is to the appeal from the judgment. To the extent that it relates to the appeal from the judgment, suffice it to say that the record is entirely barren of any evidence or, indeed, of any offer of evidence that would warrant a reversal on this ground.

Appellants contended, upon the hearing of the motion and now, that the lands were purchased at different times with the intention of appellants that "all the lands purchased by them should be owned by them as tenants in partnership" and "that all lands standing in the name of C. A. Kolstad individually or Alta A. Kolstad individually or jointly by the two of them were all considered as jointly owned and partnership property." The affidavit of C. A. Kolstad contained, among other things, the above quoted allegations.

C. A. Kolstad's testimony at the trial was at considerable variance from his statements in his affidavit. At the trial, when asked as to the ownership of the land, he testified that he owned one parcel, his wife owned another in her own right, and the third was bought in joint tenancy.[2]

Nowhere in the testimony that was given at the trial was there any state-

---

2. Testimony of Clarence A. Kolstad:

"* * * Q. You might explain what the ownership of your wife is, and your own ownership with respect to this 17,-000-odd acres shown in Exhibit 1. A. Well, in the beginning in 1942, when I first bought it, we bought two ranches, as I testified to. My wife bought what was known as the Sailor ranch, and I bought what was known as the Martin Wasesha Ranch, so that she owns that in her right, and I own the other one as we purchased it, and the Turner ranch that we bought later, we bought it in joint tenancy.

"Q. Well, substantially, without going into the exact details of it, then, your wife owns approximately half of the land and you own approximately half? A. That is close enough.

"Q. Some of it in joint tenancy and others individually owned by her and individually owned by you? A. Yes.

"Q. And while it is probably not important, but when you say that your wife bought one ranch, that was bought with her own money? A. Yes, it was.

"Q. It was actually her ranch? A. Yes.

"Q. It wasn't just a husband and wife deal where you had it deeded to her in her name? A. No. * * * "

ment that the lands in question were owned by a partnership, nor did counsel for appellants at any time make an offer to prove that the lands were owned by a partnership. What the effect would have been if such testimony were offered or given, could of course only be determined by examining the proof that was either given or offered upon that subject. We cannot, of course, speculate upon what it might have been.

■■■ This belated effort to try the case on a theory not established by evidence or offered to be so established in the District Court does not warrant this Court's interference with the discretion of the District Court in its denial of this motion.[3]

The second point relied upon by appellants in their motion to set aside the judgment is described in their brief as "accident and surprise which ordinary prudence would not have guarded against, in the testimony of Joe Meissner."

At the trial, Joe Meissner testified as a Government witness that he had been a tenant of the Kolstads upon the lands in question for about six years and had farmed those lands and was familiar with the crops that had been produced upon them. He testified as to the crop production records during those years. Mr. Kolstad's affidavit upon the motion to set aside the judgment further set out that Meissner's testimony upon these crop production records was incorrect in that in certain years the lands produced more bushels per acre than testified to by Meissner (in 1952, thirteen bushels per acre as against sixteen, and in 1953, twenty-two bushels per acre as against twenty-four).

Appellants also complain that Meissner's testimony as to the purchase of similar land and as to the price paid for it was erroneous in that the date of it was incorrect and that the acquisition of the land by Meissner from a man named Brinkman was not an arm's length transaction.

Meissner was cross-examined by appellants at length about the amount of crops that the lands in question produced, and this cross-examination was not limited in any way. No questions were asked Meissner upon cross-examination about the land that he purchased from Brinkman.

■ Under the circumstances, we see no basis for appellants' claim that the judgment should be set aside because of any newly discovered evidence or because of any accident or surprise which ordinary prudence could not have guarded against. Cf. Gill v. United States, 2 Cir., 1950, 184 F.2d 49; In re Highwood Cemetery Association, D.C.Pa.1955, 132 F.Supp. 636; Raske v. Raske, D.C.Minn. 1950, 92 F.Supp. 348; Kahle v. Amtorg Trading Corp., D.C.N.J.1952, 13 F.R.D. 107; Plaut v. Munford, 2 Cir., 1951, 188 F.2d 543.

The whole case appears to have been fully and fairly tried. It is interesting to note that the damages awarded for the property taken was higher than the highest government witness' testimony and lower than the lowest appraisal placed upon the property by appellants' witnesses. This is not an unusual occurrence.

The order of the lower court refusing to set aside the judgment appears to be entirely proper and both the judgment and the order are hereby affirmed.

---

3. The rule that a motion made under Rule 60(b) F.R.C.P. is addressed to the sound discretion of the trial court is well established. Independence Lead Mines Co. v. Kingsbury, 9 Cir., 1949, 175 F.2d 983, certiorari denied 338 U.S. 900, 70 S.Ct. 249, 94 L.Ed. 554; Stafford v. Russell, 9 Cir., 1955, 220 F.2d 853; Perrin v. Aluminum Co. of America, 9 Cir., 1952, 197 F.2d 254; Cole v. Fairview Development, 9 Cir., 1955, 226 F.2d 175.